1
2
3
4
5                    UNITED STATES DISTRICT COURT
6                   NORTHERN DISTRICT OF CALIFORNIA

7    ILIANA LACAYO,
8                Plaintiff,                    Case No.  14-cv-04077-JSC

9         v.                                   **ORDER GRANTING MOTION TO
                                               DISMISS**
10   PATRICK R. DONAHOE,
                                               Re: Dkt. No. 24
11               Defendant.

12
13         In this postal-worker employment suit, Plaintiff Iliana Lacayo ("Plaintiff"), proceeding pro

14   se and *in forma pauperis*, alleges that her civil rights were violated when her employer, the United

15   States Post Office, run by Defendant Postmaster General Patrick R. Donahoe ("Defendant"),

16   terminated her employment.  Specifically, in the first amended complaint ("FAC"), Plaintiff

17   contends that Defendant's decision to terminate her violated the Family Medical Leave Act

18   ("FMLA"), and constituted age discrimination in violation of the Age Discrimination in

19   Employment Act ("ADEA"), disability discrimination—in terms of both disparate treatment and

20   failure to accommodate a disability—under the Rehabilitation Act, and retaliation and gender

21   discrimination in violation of Title VII of the Civil Rights Act ("Title VII").  (Dkt. No. 16.)

22         Now pending before the Court is Defendant's motion to dismiss (Dkt. No. 27).  Defendant

23   initially moved to dismiss pursuant to both Federal Rule of Civil Procedure 12(b)(1), lack of

24   subject matter jurisdiction, and Rule 12(b)(6), failure to state a claim.  (Dkt. No. 24.)  After

25   carefully considering the parties' pleadings, and having had the benefit of oral argument on

26   February 5, 2015, the Court GRANTS Defendant's motion to dismiss for failure to state a claim.

27
28

*United States District Court*
*Northern District of California*

**BACKGROUND**

**A.     Factual Background**

The following facts are taken from Plaintiff's First Amended Complaint ("FAC") along with certain other documents that, as discussed in more detail below, are either incorporated or referenced in the complaint and central to Plaintiff's claims or otherwise subject to judicial notice. Plaintiff, who was 52 years old at the filing of the FAC, began working as a Letter Carrier at the Postal Service in 1985.  (Dkt. No. 16 ¶¶ 8, 10.)  At the time of the incidents at issue in this case, Plaintiff was based in the Townsend Carrier Annex in San Francisco.  (*Id.*)

In March of 2011, Plaintiff filed a formal administrative complaint against her supervisor, Warren Lo.  (*Id.* ¶ 9.)  Plaintiff alleged that Lo's conduct constituted harassment, and she sought removal of certain disciplinary action from her employment record.  (*Id.* ¶ 9.)  Plaintiff and the Postal Service engaged in mediation and counseling, which resulted in administrative redress. (*Id.*)

*AWOL in October and November 2011*

Seven months later, a series of events occurred that eventually led Plaintiff to file this case. On Saturday, October 1, 2011, Plaintiff's ex-husband—and the father of her daughter—passed away in Chicago.  (*Id.* ¶ 11.)  The next day, Plaintiff called her supervisor, Emma Rivera, to inform her of the death and to request leave from work to travel to Chicago to comfort her daughter and arrange the funeral.  (*Id.* ¶ 12.)  Rivera responded "OK."  (*Id.*)  Plaintiff did not submit official paperwork, but believed that Rivera had approved her request for leave.  (*Id.*)

The following Tuesday—October 4— Plaintiff called Rivera again and informed her that Plaintiff needed to extend her Chicago trip.  (*Id.* ¶ 13.)  Plaintiff spoke with Rivera next on Friday, October 7, 2011, to discuss when Plaintiff would return to work.  (*Id.* ¶ 14.)  On that call, Rivera mentioned Absence Without Leave ("AWOL") status.  (*Id.*)  Several days later, Rivera told Plaintiff that Postal Service Manager Cecilia Denton had advised Rivera to send Plaintiff an AWOL letter.  (*Id.* ¶¶ 15-16.)  On October 17, 2011, in a letter that Rivera signed, the Postal Service issued a letter stating that Plaintiff had been AWOL from October 4-6, 8, and 10-14, 2011.

(*Id.* ¶ 17.)  In the letter, Rivera noted that Plaintiff had been absent from work with "no call or no documentation," and that "the leave requests were not FMLA."  (*Id.*)

On October 18, 2011, Plaintiff sought medical attention at a Kaiser Permanente medical office in Antioch, where she was "diagnosed with bereavement[ ] adjustment disorder with depressed mood."  (*Id.* ¶ 18.)  At that appointment and in a follow up on October 24, the treating physician recommended that Plaintiff take time off of work, but Plaintiff wished to return to work.  (*Id.* ¶¶ 18, 22.)

The same day, Plaintiff responded in writing to the October 17 AWOL letter, explaining that she had been absent because her daughter was distraught about her father's death, which also impacted Plaintiff, and that Plaintiff believed Rivera had approved her request for leave.  (*Id.* ¶ 20.)  Plaintiff also requested that the AWOL be removed from her employment record.  (*Id.*)  Plaintiff returned to work on October 25, 2011.  (*Id.* ¶ 23.)

On November 7, 2011, Rivera gave Plaintiff a formal Letter of Warning—Absence Without Leave.  (*Id.* ¶, 24.)  Plaintiff "explained her situation, burst out crying, and told Rivera she wanted to go home as she did not feel good."  (*Id.*)  The shop steward did not authorize Plaintiff to leave because there were not enough employees to cover the mail delivery routes, so Plaintiff remained at work feeling sick and depressed.  (*Id.*)

On November 30, 2011, Plaintiff wrote a grievance letter to challenge the AWOL determination.  (*Id.* ¶ 25.)  In the letter, Plaintiff reiterated that she had been absent due to "her ex-husband's passing that caused [her] daughter to be distraught which also depressed Plaintiff."  (*Id.*)  The AWOL was never removed from Plaintiff's record.  (*Id.* ¶ 27.)

*Plaintiff's On-Duty DUI, Suspension, and Removal*

On February 14, 2012, Plaintiff was involved in an accident while driving her Postal Service van after drinking at a bar during working hours.  (*Id.* ¶ 28.)  Plaintiff had gone to a restaurant near her Postal Service facility with several co-workers, including Jeff Crowley, Sergio Acosta, and Frieda Brown.  (*Id.*)  All four postal workers drank at the bar.  (*Id.*)

After drinking, Plaintiff returned to her Postal Service vehicle intending to return it to the

Postal Service facility, but ended up involved in a three-car collision; Plaintiff contends that she drove through the intersection on a yellow light and was broadsided, but she was charged with and pleaded guilty to running a red light. (Dkt. No. 16 ¶ 28.) Plaintiff contends that she "received [the] D.U.I. because of her depression and [because] she had started drinking." (*Id.*)

The very next day, the Postal Service suspended Plaintiff "due to the . . . DUI incident." (*Id.* ¶ 29.) Plaintiff then became even more depressed and incapacitated. (*Id.*) On March 29, 2012, the Postal Service issued a Notice of Removal to Plaintiff. (*Id.* ¶ 30.) The Notice of Removal charged Plaintiff with "Improper Conduct" and "Unsatisfactory Job Performance." (Dkt. No. 25, Ex. A at 1.) The basis of the charge for improper conduct was that Plaintiff drank at least two, maybe three, alcoholic beverages then was "involved in an at fault accident and was arrested and charged with driving under the influence." (*Id.*) The Postal Service noted that Plaintiff stated during her interview that she was under stress, but found that statement to be disingenuous and self-serving given that Plaintiff did not make a claim of stress until after the DUI incident. (*Id.*) The Postal Service stated that this self-serving conduct alone warrant Plaintiff's removal from her job. (*Id.*)

The basis of the charge for unsatisfactory job performance was that, by going to the restaurant near the Postal Service facility and drinking with co-workers, Plaintiff "deviated from [her] assignment, extended [her] break and lunch, expanded [her] street time, failed to immediately return to [the] office, stop[ped] unnecessarily, . . . enter[ed] an establishment for other than official duties[, and] operated [a] Postal vehicle in an unsafe manner by driving under the influence and getting into an at fault accident." (*Id.*) The Notice of Removal stated that this conduct violated a number laws and Postal Service rules and regulations, including "endangering the public by driving drunk, drinking on the job, deviating from her route, and failing to return to work upon completion of her 'street time.'" (*Id.*)

Following grievance procedures, Plaintiff's removal became effective June 8, 2012. (Dkt. No. 16 ¶ 31; Dkt. No. 25, Ex. 2.) The other three postal workers who were drinking with Plaintiff on February 14, 2012 were also cited for drinking on the job, deviating from their routes, failing to

immediately return to the office, stopping unnecessarily, and entering an establishing for other than official duties. (*Id.* at Ex 2 at 14.) All three other postal workers were cited for the on-the-job drinking. (Dkt. No. 16 ¶ 28.) Crowley and Acosta were not terminated; Brown retired. (*Id.*)

In October 2013, Plaintiff requested reinstatement to her position. (*See id.* ¶ 46.) Denton, her manager, "refused to consider" that request, "failed to process" it, and "admittedly lost" the 2013 request. (*Id.*)

*Plaintiff's Medical History*

From February 26, 2012 through June 11, 2012, Plaintiff attended the Postal Service Employee Assistant Program and received treatment from psychologist Cynthia Front, Ph.D. (*Id.* ¶¶ 32-33.) Dr. Front diagnosed Plaintiff with "longstanding bipolar disorder, childhood history of post-traumatic stress disorder, problems with employment and with primary support group and alcohol dependence." (*Id.* ¶ 33.) At some point, at "CD Adult Group Psychotherapy" the "group leader" diagnosed Plaintiff with alcohol dependence. (*Id.* ¶ 34.) On March 31, 2012, Plaintiff saw a physician who noted that Plaintiff "had been sick for a week" and was getting worse." (*Id.*) In addition, Plaintiff attended therapy sessions with a Dr. Kahani at Kaiser from March 13, 2012 to June 12, 2012. (*Id.* ¶¶ 41-42.) She had been visiting Kaiser for mental health treatment since 1998. (*Id.* ¶ 42.) At some point Drs. Front and Kahani diagnosed Plaintiff with "Bipolar 2 Disorder, mixed and depression." (*Id.* ¶ 43.) On October 15, 2013, Dr. Demetrius Karalis diagnosed Plaintiff with "Major Depressive Episode, severe but not psychotic." (*Id.* ¶ 45.) Plaintiff lost her home due to the loss of her postal service employment. (*Id.*)

*The Postal Service's Knowledge of Plaintiff's Medical Condition*

Plaintiff's co-workers noticed that she began to have "adjustment issues" and make mistakes on the job when her route was abolished. (*Id.* ¶ 35.) One co-worker, Dora Juarez, wrote a statement in April of 2012 noting that Plaintiff appeared "out of it, unable to be mentally at work, [and] overwhelmed" beginning in October of 2011 when he ex-husband died. (*Id.*) Juarez spoke to Rivera about Plaintiff's condition, and Rivera agreed "that something was wrong" with Plaintiff. (*Id.*)

5

United States District Court
Northern District of California

In April of 2012, retired Sheriff's Deputy Martha Ortega wrote a letter to Plaintiff's shop steward, Jun Buccat, about Plaintiff's condition.  (*Id.* ¶ 36.)  Ortega wrote that in February of 2012 Plaintiff had become depressed due to her ex-husband's death, her mother's health problems, and stress and abuse at work from Rivera and Postal Service manager Cecilia Denton.  (*Id.*)

**B.    Administrative Complaints**

Plaintiff alleges that she has exhausted administrative remedies with respect to her claim. (Dkt. No. 16 ¶ 7.)  The claims in the FAC relate to two administrative complaints:  Case No. 4F-945-0031-13 (the "2013 EEO Complaint"), and Case No. 4F-940-0014-14 (the "2014 EEO Complaint").  (*Id.* ¶ 7 & Ex. A (denial of request for reconsideration of 2013 EEO Complaint) & B (final agency decision on 2014 EEO Complaint).)

*The 2013 EEO Complaint*

Plaintiff first sought EEO counseling on March 11, 2013, when she completed an "Information for Pre-Complaint Counseling" form.  (Dkt. No. 25-3; Dkt. No. 16, Ex. A.)

On June 17, 2013, Plaintiff filed the formal 2013 EEO Complaint.  (Dkt. No. 16 ¶ 5.) Plaintiff alleged discrimination due to her race (Hispanic), national origin (Nicaraguan), sex (female), age (40+) and disability (bipolar disorder and PTSD) based on the Postal Service's following three actions:  (1) the November 7, 2011 decision finding Plaintiff AWOL; (2) the February 15, 2012 decision to place her on off-duty, non-pay status of Emergency Placement— effectively, a suspension; and (3) the March 29, 2012 Notice of Removal that became effective on June 8, 2012.  (Dkt. No. 16 ¶ 5 & Ex. A.)

On July 16, 2013, the EEOC dismissed the 2013 EEO Complaint as untimely, finding that Plaintiff had failed to seek EEO counseling within the required 45-day time period.  (Dkt. No. 25-3 at 2-3; *see also* Dkt. No. 16 at Ex. A.)  The EEOC determined that Plaintiff had both actual and constructive notice of the 45-day time period:  actual notice because she argued in her complaint that her failure to comply with that regulatory requirement should be excused, and constructive because she had engaged in prior EEO activity and her employer posted information about administrative complaints in her office.  (*Id.* at 3.)  In addition, the EEOC rejected Plaintiff's

6

assertion that she had been unable to comply with the 45-day requirement due to mental and emotional incapacity.  (*Id.*)

Plaintiff appealed the EEOC's decision on August 15, 2013 (Dkt. No. 16 ¶ 6), but the Office of Federal Operations denied the appeal and affirmed the EEOC's decision.  (*Id.* ¶ 6; Dkt. No. 25-9.)  The denial was based, in part, on the Office of Federal Operations' determination that Plaintiff's failure to comply with the 45-day time limit was not excused by incapacitation due to her mental condition.  (Dkt. No. 25-9 at 2.)

Plaintiff then filed a motion for reconsideration, which the Office of Federal Operations denied on June 5, 2014, once again finding that Plaintiff's claims were untimely because she had not established that her failure to comply with the 45-day deadline was excused.  (Dkt. No. 16 at ¶ 7 & Ex. A ("Complainant has failed to affirmatively demonstrate that she was so incapacitated that she could not have complied with the applicable time limits.").)

*The 2014 EEO Complaint*

Six months later, on January 8, 2014, Plaintiff filed the 2014 EEO Complaint.  (Dkt. No. 16 ¶ 46; Dkt. No. 25-12; Dkt. No. 25-14.)  Here, Plaintiff argued that the Postal Service's failure to respond to her request for reinstatement constituted retaliation for filing the 2013 EEO Complaint and discrimination on the basis of race (Hispanic), national origin (Nicaraguan), sex (female), age (40+) and disability.  (Dkt. No. 25-12 ¶¶ 16-19.)  Plaintiff noted that her disability claim was based on her "anxiety, bipolar [diagnosis] and major severe depression."  (*Id.* ¶ 20; Dkt. No. 16, Ex. B as 12.)  On October 29, 2014, the EEOC issued a final agency decision denying all of Plaintiff's claims.  (Dkt. No. 16, Ex B.)

C.    **Procedural History**

On September 8, 2014, before the EEOC had issued that final agency decision on the 2014 EEO Complaint, Plaintiff filed this action.  (Dkt. No. 1.)  The initial complaint challenged the three adverse employment actions included in the 2013 EEO Complaint:  the November 2011 AWOL letter; the February 2012 suspension; and the March 2012 Notice of Removal.  (*See id.*)  It also alleged causes of action for wrongful discharge under the FMLA, age discrimination under

1    the ADEA, and disability discrimination under the Rehabilitation Act.  (*Id.* ¶¶ 31-47.)

2         On November 26, 2014—after the EEOC issued its final agency action on the 2014 EEO

3    Complaint—Plaintiff filed the FAC, which adds allegations regarding the Postal Service's failure

4    to consider her request for reinstatement, and included causes of action for retaliation under Title

5    VII, the ADA, and the ADEA, and gender discrimination under Title VII.  (*See* Dkt. No. 16.)

6         Defendant moved to dismiss on the FAC December 31, 2014 (Dkt. No. 24), and the motion

7    is now fully briefed.[1]  The Court heard oral argument on February 26, 2015.

8                                **LEGAL STANDARD**

9    **A.    Legal Standard on a 12(b)(1) Motion to Dismiss**

10        A motion to dismiss filed pursuant to Rule 12(b)(1) is a challenge to the court's subject

11   matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1).  "Federal courts are courts of limited

12   jurisdiction," and it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v.*

13   *Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994).  The party invoking the jurisdiction of the

14   federal court bears the burden of establishing that the court has the requisite subject matter

15   jurisdiction to grant the relief requested. *Id.*

16        A challenge pursuant to Rule 12(b)(1) may be facial or factual. *See White v. Lee*, 227 F.3d

17   1214, 1242 (9th Cir. 2000).  In a facial attack, the jurisdictional challenge is confined to the

18   allegations pled in the complaint.  *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

19   The challenger asserts that the allegations in the complaint are insufficient "on their face" to

20   invoke federal jurisdiction.  *See Safe Air Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th

21   Cir. 2004).  To resolve this challenge, the court assumes that the allegations in the complaint are

22   true and draws all reasonable inference in favor of the party opposing dismissal.  *See Wolfe*, 392

23   F.3d at 362.  "By contrast, in a factual attack, the challenger disputes the truth of the allegations

24   that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039.  To

25

26   _____

27   [1] Defendant filed a notice indicating that Plaintiff's opposition to the instant motion to dismiss was
     untimely filed.  (Dkt. No. 26.)  Defendant did not ask the Court to strike Plaintiff's opposition, but
28   sought an extension of time to reply.  (*Id.* at 2.)  The Court has considered both Plaintiff's
     opposition and Defendant's reply.  (Dkt. Nos. 27, 30.)

United States District Court
Northern District of California

resolve this challenge, the court "need not presume the truthfulness of the plaintiff's allegations." *Id.* (citation omitted). Instead, the court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* (citations omitted). Once the moving party has made a factual challenge by offering affidavits or other evidence to dispute the allegations in the complaint, the party opposing the motion must "present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989).

**B.      Legal Standard on a 12(b)(6) Motion to Dismiss**

A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facial plausibility standard is not a "probability requirement" but mandates "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Mar. Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir.2008). "[D]ismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotations and citations omitted); *see also Neitzke v. Williams,* 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law.").

Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), under which a party is only required to make "a short and plain statement of the claim showing that the pleader is entitled to relief," a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555). "[C]onclusory allegations of law and unwarranted inferences are

insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."), *cert. denied,* 132 S. Ct. 2101 (2012).  The court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.  "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 663-64.

Pro se pleadings are generally liberally construed and held to a less stringent standard.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  In *Hebbe v. Pliler*, 627 F.3d 338 (9th Cir. 2010), the Ninth Circuit held that courts must still liberally construe pro se filings post-*Iqbal* noting that "[w]hile the standard is higher, our obligation remains, where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt." *Id.* at 342 (internal quotations and citations omitted).  Nevertheless, the Court may not "supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska,* 673 F.2d 266, 268 (9th Cir. 1982).

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith,* 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citations omitted).

## DISCUSSION

Defendant offers a number of arguments for dismissal.  First, Defendant contends that Plaintiff's second through sixth causes of action must be dismissed to the extent that they relate to the adverse actions addressed in the 2013 EEO Complaint because Plaintiff failed to exhaust administrative remedies over these claims so the Court lacks jurisdiction over them.  (Dkt. No. 24 at 9.)  Second, Defendant argues that Plaintiff's first cause of action, which alleges violations of

the FMLA, must be dismissed because the statute does not apply to her under the circumstances presented.  (*Id.*)  Defendant also contends that the remaining causes of action in the FAC must be dismissed for failure to state a claim except for the fifth, which alleges that the Postal Service's denial of her 2013 Request for Reinstatement—addressed in the 2014 EEO Complaint—was retaliatory.  (*Id.*)  The Court will address the question of exhaustion first before considering whether the causes of action in the Complaint are sufficiently pleaded.

A.      **Administrative Exhaustion**

        1.      Standard for Evaluating this Motion

        Federal law directs an employee to exhaust her administrative remedies before pursuing employment discrimination claims in district court.  One such requirement is an aggrieved employee's obligation to contact an EEO counselor within 45 days of the alleged discriminatory conduct.  *See* 29 C.F.R. § 1614.105(a).[2]  Defendant argues that the second through sixth causes of action, which allege violations of Title VII, the ADEA, and the Rehabilitation Act, must be dismissed under Federal Rule of Civil Procedure 12(b)(1) on the ground that the Court lacks subject matter jurisdiction over these claims because Plaintiff failed to exhaust her administrative remedies.  (Dkt. No. 24 at 19-22.)  Plaintiff responds that Rule 12(b)(1) is not the proper framework for deciding the question of administrative exhaustion; rather, she contends, it is a Rule 12(b)(6) question and the FAC alleges facts sufficient to establish either the possibility she complied with the exhaustion requirements or grounds for waiving any deficiency with respect to

---

[2] Section 1614.105(a) provides in full:

> An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action. (2) The agency or the Commission shall extend the 45–day time limit in paragraph (a)(1) of this section when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have been known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the Commission.

exhaustion.  (Dkt. No. 27 at 7-10, 17.)

Whether the 45-day request-for-EEO-counseling requirement is jurisdictional is a matter of debate among the courts.  A significant body of Ninth Circuit case law states that "[t]o establish federal subject matter jurisdiction, [a plaintiff is] required to exhaust her administrative remedies before seeking federal adjudication of her claims."  *EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir. 1994); *see also Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 638 (9th Cir. 2002); *Sommatino v. United States*, 255 F.3d 704, 708 (9th Cir. 2001) ("In cases where a plaintiff has never presented a discrimination complaint to the appropriate administrative authority, we have held that the district court does not have subject matter jurisdiction").

However, "[o]ther Ninth Circuit decisions have noted the imprecise use of the term 'subject matter jurisdiction' and conflicting case law on the issue." *Taylor v. Blank*, No. 1:12-CV-1931 AWI JLT, 2014 WL 1577313, at *3 (E.D. Cal. Apr. 17, 2014).  For example, in *Vinieratos v. United States*, 939 F.2d 762 (9th Cir. 1991), the Ninth Circuit explained that "[t]here is a subtle distinction here worthy of note":  administrative exhaustion is not a "jurisdictional requirement per se[,]" but rather is often "a legal question" about "whether the plaintiff has satisfied a statutory precondition to suit."  *Id.* at 768 (citations omitted).  The Supreme Court has also emphasized the need to disentangle "the distinction between two sometimes confused or conflated concepts: federal court 'subject-matter' jurisdiction over a controversy; and the essential ingredients of a federal claim for relief[.]"  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 503, 515-16 (2006) (citations omitted).  The *Arbaugh* Court provides guidance for lower courts to follow:

> If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue. But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character.

*Id.*  While the Ninth Circuit has long made clear that not all administrative exhaustion requirements are jurisdictional in nature, it has noted that Circuit "case law also holds that *substantial compliance with the presentment* of discrimination complaints to an appropriate

12

administrative agency *is* a jurisdictional prerequisite." *Sommatino*, 255 F.3d at 709 (first emphasis added); *see also Leong v. Potter*, 347 F.3d 1117, 1122 (9th Cir. 2003) (citation omitted) ("[S]ubstantial compliance with the exhaustion requirement is a jurisdictional pre-requisite . . . [and t]he specific claims made in district court ordinarily must be presented to the EEOC." (citations omitted)).

The particular administrative requirement at issue here requires an employee to contact an EEO counselor within 45 days, as set forth in 29 C.F.R. § 1614.105.[3]  In *Kraus v. Presidio Trust Facs. Div./Residential Mgmt. Branch*, 572 F.3d 1039 (9th Cir. 2009), the Ninth Circuit stated that failure to comply with the 45-day request-for-counseling requirement "is *not* a jurisdictional prerequisite for suit in federal court, [and] . . . absent waiver, estoppel, or equitable tolling, failure to comply with this regulation is . . . fatal to a federal employee's discrimination claim in federal court." *Id.* at 1043 (emphasis added) (internal quotations omitted) (citing *Lyons v. England*, 309 F.3d 1092, 1105 (9th Cir. 2002)).  Despite that statement, many courts in this District treat the 45-day-request-for-counseling requirement as jurisdictional.  *See, e.g.*, *Gill v. Gen. Servs. Admin.*, No. 14-cv-2999-MEJ, 2014 WL 6469377, at *3 (N.D. Cal. Nov. 18, 2014) (treating the 45-day time limit as a jurisdictional prerequisite on a motion to dismiss); *Williams v. Mabus*, No. 5:13-cv-00470 HRL, 2014 WL 5305819, at *4 (N.D. Cal. Oct. 16, 2014) (same); *Goel v. Shah*, No. C 13-

---

[3]  Administrative exhaustion applies to Plaintiff's second through sixth causes of action.  The third, fourth, fifth, and sixth causes of action arise under the Rehabilitation Act and Title VII, which both require administrative exhaustion prior to any federal lawsuit.  *See Brown v. Gen. Serv. Admin.*, 425 U.S. 820, 832-33 (1976) (Rehabilitation Act); *Vinieratos v. Dep't of the Air Force*, 939 F.2d 762, 773-75 (Title VII).  Among these requirements is the 45-day time limit on initiating EEO counseling set forth in 29 C.F.R. § 1614.105.  Under the circumstances presented, however, this requirement also applies to Plaintiff's second and fifth causes of action arising under the ADEA.  (*See* Dkt. No. 16 ¶¶ 52-58, 72.)  The ADEA provides an employee with two alternative options to challenge adverse employment actions.  *See Whitman v. Mineta*, 541 F.3d 929, 932 (9th Cir. 2008).  Under the first, an employee merely gives the EEOC notice of an alleged discriminatory act within 180 days then notice of intent to sue at least 30 days before filing suit in federal court.  29 U.S.C. § 633a(c), (d).  In contrast, under the second the employee invokes the EEOC's administrative claims process, which functions just as it does in the context of the Rehabilitation Act and Title VII claims.  *Id.* § 633a(b), (c).  Where, as here, an employee chooses the latter option—the EEOC administrative process—she must comply with all regulations associated with that process, including the 45-day counseling requirement.  Thus, though the statutory framework differs, the same exhaustion analysis applies to Plaintiff's second through sixth causes of action.

<div style="margin-left:auto; width:fit-content;">United States District Court<br>Northern District of California</div>

3586 SBA, 2014 WL 460867, at *2 (N.D. Cal. Feb. 3, 2014); *Domingo v. Donohue*, Nos. 13-cv-4150-CRB & 13-cv-4151 CRB, 2014 WL 605485, at *7-8 (N.D. Cal. Feb. 14, 2014) (citations omitted) (same).  On the other hand, following *Kraus*, other courts have determined that an employee's failure to follow to a tee the 45-day timing requirements is a "shortcoming [that] relates to the substantive adequacy of [a plaintiff's] complaint[,]" not a jurisdictional flaw.  *See, e.g.*, *Taylor*, 2014 WL 1577313, at *4 (citations omitted); *Mendoza v. Lehigh Southwest Cement Co.*, No. 11-CV-01286-LHK, 2012 WL 1534754, at *5 (N.D. Cal. May 1, 2012); *Norris v. Foxx*, No. C13-4928 BHS, 2014 WL 935304, at *4 (W.D. Wash. Mar. 10, 2014).

The Court agrees with the latter approach.  Nonetheless, *Kraus* did not state that it was overruling earlier cases, like *Sommatino*, that held that, in the context of a motion to dismiss for lack of subject matter jurisdiction, substantial compliance with the requirement of presenting a claim to an EEO counselor is a jurisdictional prerequisite.  Without deciding whether substantial compliance with the obligation to present one's claims to the administrative agency is a jurisdictional question, the Court concludes that strict compliance with the 45-day request-for-counseling requirement is not.  *See Kraus*, 572 F.3d at 1043; *Sommatino*, 255 F.3d at 709; *see also Offield v. Holder*, No. 12-cv-03053-JST, 2014 WL 1892433, at *5-6.

Accordingly, the Court concludes that whether Plaintiff sought counseling outside the 45-day window—*i.e.*, whether her claims are time-barred—is merely a precondition to suit like a statute of limitations addressed under Rule 12(b)(6).

**B.     Extra-Pleading Materials**

As a preliminary matter, before the Court can address the substance of Defendant's motion to dismiss, the Court must rule on the admissibility of the extra-pleading materials that have been submitted to the Court in support of the motion.  When adjudicating a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(1), a court may consider evidence outside the pleadings, including affidavits submitted by the parties.  *See Safe Air*, 373 F.3d at 1039.  When adjudicating a motion to dismiss brought pursuant to Rule 12(b)(6), however, the Court's consideration of extra-pleading materials is more limited.  Normally, the Court cannot consider

United States District Court
Northern District of California

matters outside of the pleading without converting the motion into a motion for summary judgment.  *See* Fed. R. Civ. P. 12(b)(6); 12(d); *see also Ramirez v. United Airlines, Inc.*, 416 F. Supp. 2d 792, 795 (N.D. Cal. 2005) ("[M]aterials outside the pleadings ordinarily are not considered on a motion to dismiss[.]" (citation omitted)).  However, the Ninth Circuit has determined that courts may consider documents alleged in a complaint and essential a plaintiff's claims.  *See Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994); *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295 (9th Cir. 1998).  A court may also "take judicial notice of documents on which allegations in the complaint *necessarily* rely, even if not expressly referenced in the complaint, provided that the authenticity of those documents is not in dispute[,]" *Tercica, Inc. v. Insmed Inc.*, No. C 05-5027 SBA, 2006 WL 1626930, at *8 (N.D. Cal. June 9, 2006) (citing *In re Autodesk, Inc. Sec. Litig.*, 132 F. Supp. 2d 833, 837-38 (N.D. Cal. 2000)), and may take judicial record of matters of public record, *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010), including "records and reports of administrative bodies."  *Mack. v. So. Bay Beer Distribs.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *abrogated on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991) (citation omitted).  In the context of employment discrimination cases in particular, it is well established that courts may consider the administrative record of a plaintiff's claims before the EEOC as judicially noticeable matters of public record.  *See, e.g., Hsu v. Donohoe*, No. 5:13-cv-02253-PSG, 2014 WL 11539112, at *2 (N.D. Cal. Mar. 20, 2014) (taking judicial notice of documents "stemming from [the plaintiff's] employment, litigation, and EEO history"); *Huang v. Wieking*, No. Civ. S-07-0589 WBS, 2007 WL 1574552, at *2 (N.D. Cal. May 30, 2007) (noting that the court could consider "the Grievance and EEO Policy, the EDR Plan, and the administrative record of plaintiff's termination" as "part of the public record"); *Dao v. Univ. of Cal.*, No. C-04-2257, 2004 WL 1824129, at *4 (N.D. Cal. Aug. 13, 2004) (taking judicial notice of records relating to the plaintiff's administrative grievance of her wrongful termination and employment discrimination claims).

The extrinsic evidence that Defendant submitted all pertains to Plaintiff's administrative proceedings with the EEO; thus, all are either referenced in the complaint or matters of public

15

record and properly considered on either a 12(b)(1) or 12(b)(6) motion to dismiss.  Plaintiff's

objections—on the ground that some documents are not referenced in the FAC and others are not

properly authenticated (*see* Dkt. No. 27 at 11-12)—are overruled.  Courts can consider an

employee's administrative record even if the documents were not referenced in the complaint, *see*

*Hsu*, 2014 WL 11539112, at *2; *Huang*, 2007 WL 1574552, at *2; *Dao*, 2004 WL 1824129, at *4,

and Plaintiff has not offered any reason to doubt the authenticity of the documents.  Accordingly,

the Court will consider the documents referenced in the complaint and judicially noticeable

matters of public record with respect to the motion to dismiss.   However, in doing so, the Court

only notices the existence of the administrative proceedings and the agency's findings and does

not credit the truth of any fact recounted or matter asserted in the documents.  *See, e.g.*, *In re Bare*

*Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1070 (N.D. Cal. 2010) (taking judicial notice of

a complaint but not "of the substance of that [document] for the truth of any matter asserted"

therein).

## C.      Exhaustion of Administrative Remedies

Administrative Exhaustion of Counts Two through Six

Defendant contends that the claims in Plaintiff's second through sixth causes of actions

based on the adverse actions listed in the 2013 EEO Complaint—*i.e.*, the November 7, 2011

AWOL letter, the February 15, 2012 suspension, and the March 26, 2012 Notice of Removal—

must be dismissed because Plaintiff did not timely notify an EEO counselor of these claims as 29

C.F.R. § 1614.105(a)(1) requires, and therefore they are not administratively exhausted.  (Dkt. No.

24 at 17.)  Plaintiff, for her part, concedes that these adverse actions occurred more than 45 days

prior to the day she first sought EEO counseling; however, she argues that the FAC alleges enough

facts to make it possible that she sought counseling within the 45-day window and, in the

alternative, invokes equitable tolling as a reason to bar application of this timing requirement.

(Dkt. No. 27 at 17-18.)  The Court concludes that the claims are time-barred because Plaintiff has

not alleged facts sufficient to plausibly establish either that she timely sought EEO counseling or

that grounds for equitable tolling exist.

As explained above, a plaintiff seeking to pursue an individual complaint of discrimination must allege facts sufficient to show "substantial compliance" with the statutory and regulatory presentment requirements—*i.e.*, that she presented her claims to the administrative agency before filing suit in federal court. *See* 572 F.3d at 1043; *Sommatino*, 255 F.3d at 709; *Offield*, 2014 WL 1892433, at *5. But substantial compliance need not be perfect compliance. To the contrary, a plaintiff can substantially comply with Section 1614.105 if she "initiat[es] contact with *any agency official logically connected with the EEO process*, even if that official is not an EEO Counselor, and by exhibiting an intent to begin the EEO process." *Kraus*, 572 F.3d at 1044 (emphasis in original).

Once a plaintiff has demonstrated substantial compliance with the presentment requirement, the court then considers whether the plaintiff timely requested counseling within 45 days of any alleged adverse employment action pursuant to 29 C.F.R. § 1615.105(a)(1). *See Kraus*, 572 F.3d at 1043 (noting that the "plaintiff did seek administrative relief as to the claims relevant here, by filing a formal EEO complaint" but the question remained "whether, before filing her EEO complaint, she contacted an EEO counselor within 45 days of each alleged discriminatory event"). If not, the court considers whether this time limit is "subject to waiver, estoppel [or] equitable tolling." *Id.* (citing 29 C.F.R. § 1614.604(c)). Equitable tolling, which is the only such grounds to excuse the otherwise time-barred claims at issue here, may extend the filing time period requirement "when the individual shows that he or she . . . did not know and reasonably should not have been [sic] known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the Commission." 29 C.F.R. § 1614.105(a)(2). Equitable tolling looks to the plaintiff's excusable ignorance and lack of prejudice to defendant. *Leong*, 347 F.3d at 1122-23. The doctrine "has been consistently applied to excuse a claimant's failure to comply with the time limitations where she had neither actual nor constructive notice of the filing period." *Leorna*

*v. U.S. Dep't of State*, 105 F.3d 548, 551 (9th Cir. 1997).  The focus is on whether there was excusable delay by the plaintiff:  "If a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period, then equitable tolling will serve to extend the statute of limitations for filing suit until the plaintiff can gather what information he needs."  *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000) (citations omitted); *see also Boyd*, *752 F.2d 410, 414 (9th Cir.1985)* ("The time period for filing a complaint of discrimination begins to run when the facts that would support a charge of discrimination would have been apparent to a similarly situated person with a reasonably prudent regard for his rights." (citation omitted)).

Here, the administrative record before the Court indicates that Plaintiff substantially complied with statutory presentment requirement:  she filed the 2013 EEO Complaint.  Without question, she has presented her claims at the agency level.  But the question remains whether she requested counseling within 45 days of each adverse action alleged therein.  The allegations in the FAC and the judicially noticeable documents indicate that Plaintiff did not formally initiate EEO counseling by filing an "Information for Pre-Complaint Counseling" until March 11, 2013—276 days after the latest-dated adverse employment action mentioned in the 2013 EEO Complaint. (*See* Dkt. No. 25-3.) Indeed, Plaintiff concedes as much.  Thus, her first actual request for EEO counseling was well outside the 45-day window and her claims are time-barred.  However, Plaintiff contends that there are two grounds to excuse this lateness: that the FAC alleges the "possibility" that she requested counseling at the wrong EEO office with 45 days, and that the 45-day window should be equitably tolled due to incapacitation.  (*See* Dkt. No. 27 at 18.)

Starting with the timely request argument, Plaintiff does not allege in the FAC that she initiated any contact at an EEO office or otherwise sought counseling before 276 after the last employment action—let alone that she did so within 45 days.  Instead, Plaintiff points to a single sentence from the Office of Federal Operations' denial of her request for reconsideration, which states that after-the-fact doctors' notes indicated that Plaintiff "mistakenly sought EEO assistance at the wrong location."  (Dkt. No. 16, Ex. A.)  Based on this statement, Plaintiff states that "[i]t is entirely *possible* that [she] initiated EEO contact, albeit at the wrong office, within 45 days."

United States District Court
Northern District of California

(Dkt. No. 27 at 18.)  But even accepting the Office of Federal Operations' statement as true, it does not constitute an allegation that Plaintiff made a request for counseling at a different EEO office, let alone that she did so *within 45 days* of any of the adverse actions alleged in the 2013 EEO Complaint.  The "sheer possibility" of compliance with the timing requirements is not enough to resuscitate otherwise time-barred claims.  *See Iqbal*, 556 U.S. at 678.  The FAC thus fails to plausibly establish that the claims included in the 2013 EEO Compliant are not time-barred.  Moreover, at the hearing on this motion, when the Court asked Plaintiff whether she could allege any facts supporting the claim that she actually sought EEO counseling within the 45 day window, Plaintiff conceded that she could not offer any and instead focused on why the 45-day window should be tolled.

Unfortunately for Plaintiff, however, the facts alleged in the FAC also fail to demonstrate grounds for equitable tolling.  First, Plaintiff nowhere contends that she was unaware of the 45-day timing requirement.  To the contrary, throughout the administrative record she indicates that she had knowledge of the 45-day requirement based on her past EEO experience and the fact that her employer visibly posted a notice of these requirements in her break room, and she does not contest this statement.  Thus, equitable tolling is not appropriate here based on ignorance of the regulatory requirement.  *See Leorna*, 105 F.3d at 551.

Plaintiff's next argument, that the Court should equitably toll the 45-day regulatory reporting window because she was incapacitated during the relevant time period due to her mental health diagnoses of bipolar disorder, PTSD, and depression, fares no better.  (Dkt. No. 27 at 18.)  Incapacitation due to mental incompetence may equitably toll administrative deadlines.  *Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999).  Other courts have rejected plaintiffs' attempts to seek equitable tolling to save otherwise time-barred claims on the grounds of depression and anxiety where the plaintiff had not submitted evidence to support incapacitation and the allegations in the complaint indicate that the plaintiff was competent enough to enforce other legal rights, like a worker's compensation claim.  *See, e.g.*, *Golez v. Potter*, No. 09cv0965 AJB(WMC), 2011 WL 4914870, at *7 (S.D. Cal. Oct. 17, 2011).  In fact, courts have declined to find a plaintiff

incapacitated even when he is hospitalized during the relevant period. *See, e.g.*, *Long v. Paulson*, 349 F. App'x 145, 146 (9th Cir. 2009) (noting that the plaintiff's argument that his hospitalization rendered him incapacitated for the purposes of tolling was "[no]thing more than a garden variety claim of excusable neglect[,] which does not justify the application of equitable tolling" (citation omitted)). The threshold for incapacitation therefore requires a showing that the plaintiff "was completely psychiatrically disabled during the relevant limitation period." *Stoll*, 165 F.3d at 1242. For example, courts have found incapacitation severe enough for equitable tolling where the plaintiff "has attempted suicide numerous times—and may do so again . . . [and] is unable to read, open mail, or function in society" due to her mental health condition. *Id.*

The allegations in the FAC do not present such a case; in fact, they contradict the argument that Plaintiff was so mentally incompetent that she was unable to comply with her legal rights. The FAC indicates that, during the time period at issue, Plaintiff was able to successfully apply for State Disability benefits and file written requests for copies of her employment file. (Dkt. No. 16 ¶¶ 37, 44.) At the hearing, Plaintiff noted that she was nonetheless incapacitated because she had help applying for these benefits, but no such facts appear in the FAC. In short, rather than demonstrating the type of utter incompetence that gives rise to incapacitation-based tolling, the FAC indicates that Plaintiff was simply focused on enforcing other legal rights. Thus, Plaintiff has not shown that equitable tolling of the 45-day time period is appropriate here. *See, e.g.*, *Golez*, 2011 WL 4914870, at *7.

In short, because the allegations in the FAC and the materials in the administrative record demonstrate that the claims in the 2013 EEO Complaint are time-barred, the second through sixth causes of action are dismissed to the extent that they relate to claims addressed in the 2013 EEO Complaint.

## D.     Sufficiency of Claims

The Court now considers whether Plaintiff otherwise states a claim upon which relief may be granted in all but the fifth cause of action. Although the claims are time barred given the limitations issue discussed above, the Court nonetheless has jurisdiction to address the sufficiency

of the entire FAC, even causes of action based on those untimely claims.  While in its motion

Defendant contended that all six causes of action were insufficiently pleaded, the parties agree that

Plaintiff's fifth cause of action for retaliation (Dkt. No. 16 ¶¶ 71-76) is limited to a single

retaliatory act—the 2013 Request for Reinstatement—based on a single protected activity—the

filing of the 2013 EEO Complaint.  (Dkt. No. 24  30; Dkt. No. 27 at 21.)  Given the parties'

agreement, the Court does not address this cause of action.

       1.     First Cause of Action:  FMLA Claim

In the first cause of action, Plaintiff contends that the Postal Service's termination of her

employment violated the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601-2654.  (Dkt.

No. 16 ¶ 48.)  Specifically, Plaintiff laments the Postal Service's failure to take into account the

"pre-existing conditions which led to the events of February 14, 2012[,]" the fact that Plaintiff

"expressed remorse repeatedly in writing and accepted responsibility[ ] by pleading guilty to [a]

DUI and completing required DUI classes successfully, along with group therapy to receive

psychotherapy to prevent any recurrence[,]" and the fact that the accident "involved no personal

injuries[.]"  (*Id.* ¶ 49.)  Plaintiff further alleges that her termination was improper under the FMLA

because the termination effectively "cut off her health benefits[,] which delayed her recovery for

at least eight months until she was able to get up and obtain help."  (*Id.*)  Defendant argues that the

Court must dismiss this cause of action because Plaintiff has failed to state a claim for wrongful

termination under the FMLA and has failed to state a prima facie case that she was entitled to

FMLA leave in the first instance.  (Dkt. No. 24 at 23-24.)  Because Plaintiff has not alleged facts

sufficient to plausibly establish that the Postal Service interfered with any rights that the FMLA

protects, the first cause of action fails to state a claim upon which relief may be granted.

"The FMLA provides job security and leave entitlements for employees who need to take

absences from work . . . to care for family members with serious illnesses."  *Xin Liu v. Amway*

*Corp.*, 347 F.3d 1125, 1132 (9th Cir. 2003) (citing 29 U.S.C. § 2612)).  The statute "creates two

interrelated substantive rights: first, the employee has a right to use a certain amount of leave for

protected reasons, and second, the employee has a right to return to his or her job or an equivalent

job after using protected leave." *Bachelder v. Am. W. Airlines*, 259 F.3d 1112, 1122 (9th Cir. 2001) (citing 29 U.S.C. §§ 2612(a), 2614(a)). "Congress has made it unlawful for an employer to interfere with, restrain, or deny an employee's exercise or attempt to exercise those rights, 29 U.S.C. § 2615(a)(1), or to retaliate or discriminate against an employee for opposing unlawful practices involving protected leave or for participating in FMLA proceedings or inquiries, *id.* § 2615(a)(2), (b)." *Bonzani v. Shinseki*, No. CIV S-11-0007 EFB, 2011 WL 4479758, at *6 (E.D. Cal. Sept. 26, 2011). Here, the FAC does not specify which type of claim Plaintiff brings, but the complaint does not allege any facts which demonstrate that she was discriminated against or discharged for formally opposing an unlawful practice under the FMLA or for participating in FMLA proceedings; thus, there is no Section 2615(a)(2) or 2615(b) claim at issue. *See id.*; *see also Bachelder*, 259 F.3d at 1124. The Court thus considers whether Plaintiff adequately alleges a claim for interference.

Interference claims prohibit "discriminating or retaliating against an employee for having exercised or attempted to exercise FMLA rights[,]" including "us[ing] the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions[.]" *Id.* (citations omitted); *see also Bachelder*, 259 F.3d at 1122 (noting that employers may not use the taking of FMLA leave as a negative factor in employment decisions). However, to state a claim for interference under Section 2612(a)(1), FMLA leave must be at issue. *Litson v. ITS Dep't of Bus. & Indus.*, 311 F. App'x 1000, 1002 (9th Cir. 2009) (stating that no cause of action exists under the FMLA if termination results from or relates to absences not protected under the FMLA or from the employee's own performance); *see also Marchisheck v. San Mateo Cnty.*, 199 F.3d 1068, 1070 (9th Cir. 1999) (same). The FMLA entitles covered employees to take up to twelve weeks of unpaid family leave, among other reasons, to care for a daughter that has a serious health condition or "[b]ecause of a serious health condition that makes the employee unable to perform the functions of [her] position." 29 U.S.C. § 2612. A serious health condition is "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider."

United States District Court
Northern District of California

29 U.S.C. § 2611(11).  For the FMLA to cover outpatient treatment, the condition at issue must involve either a period of incapacity of at least three consecutive days and treatment two or more times by a provider or a chronic serious health condition that result in a period of incapacity. *Marchiseck*, 199 F.3d at 1074 (citation omitted).  "Incapacity," in turn, is defined as "inability to work, attend school or perform other regular daily activities due to the serious health condition[.]" *Id.* (citation omitted).

Here, Plaintiff's FMLA claim suffers from a number of defects.  First, the claim itself is confusing and therefore fails to comply with Rule 8(a)'s requirement that she include a short and plain statement of the claim and the legal grounds that support it.  *See* Fed. R. Civ. P. 8(a).  She alleges that "by ignoring her preexisting conditions, and cutting her health benefits, Defendant could have avoided the events of February 14, 2012."  (Dkt. No. 16 ¶ 49.)  From these allegations, it appears that Plaintiff is arguing that her termination was improper because the denial of FMLA leave *caused* Plaintiff to get into her Postal Service vehicle after drinking on the job, get in an accident, and plead guilty to a DUI offense.  Such a claim does not fall within the FMLA's purview.  But even if Plaintiff's FMLA theory is somehow more direct, the cause of action fails to state a claim because the FAC does not plausibly allege that Plaintiff was entitled to FMLA leave in the first instance.  *See Litson*, 311 F. App'x at 1002.

The FAC has failed to plausibly allege that Plaintiff was entitled to FMLA leave based on the need to care for her daughter.  The FAC does not contain any allegations that Plaintiff's daughter suffered from a "serious health condition" as the FMLA defines the term.  *See Marchisek*, 199 F.3d at 1074.  There are no allegations about the type of condition she suffered from; rather, the sole allegations pertaining to Plaintiff's need to care for her daughter state that the daughter "was devastated when her father died[,]" and later that her daughter was "distraught" and "very distracted[.]"  (Dkt. No. 16 ¶¶ 11, 25, 26.)  There are no factual allegations regarding a particular condition that Plaintiff's daughter suffered from, let alone the treatment Plaintiff's daughter required.  (*See generally id.*)  Thus, the FAC fails to plausibly allege that Plaintiff was entitled to FMLA leave to care for her daughter.

The same is true to the extent that Plaintiff seeks to base her FMLA claim on leave taken to care for herself. Plaintiff argues that her claim survives Defendant's motion because she has adequately pleaded that she had a mental health condition and sought treatment. (Dkt. No. 27 at 17.) Indeed, Plaintiff does identify conditions she suffered from in the FAC—depression and stress after her ex-husband died—and also alleges that she sought mental health at Kaiser between 1998 and 2012. (Dkt. No. 16 ¶¶ 26-27, 43.) But this alone is not enough. While taking these facts as true the Court could reasonably infer that Plaintiff's depression was a serious health condition that warranted FMLA leave in the wake of her ex-husband's death and, thus, the Postal Service should have given her FMLA leave instead of marking her AWOL on October 21 and 22, 2011, Plaintiff has not alleged facts that plausibly establish that the Postal Service terminated her because of that AWOL determination. Indeed, Plaintiff's own description of her claim belies this fact: she contends that she was fired because of the DUI incident. (*See* Dkt. No. 16 ¶ 49.) In short, there are no allegations that her termination was motivated by or meant to punish any request for FMLA leave and, as such, her FMLA wrongful termination claim fails. *See Bachelder*, 259 F.3d at 1122.

Plaintiff's argument to the contrary is unpersuasive. Plaintiff insists that the FAC sufficiently states a claim of an FMLA violation because it puts Defendant on notice of the claim. (Dkt. No. 27 at 16 ("Plaintiff did not have to plead that her daughter has a serious health condition under the FMLA[, and i]n any event, Plaintiff has pled enough facts to give notice to Defendant.").) But Plaintiff's conception of the relevant pleading standard misses the mark: *Iqbal* and *Twombly* eliminated mere notice pleading, and instead plainly require a plaintiff to plead facts sufficient to give rise to a plausible claim for relief. Thus, while Plaintiff is correct that a plaintiff in an employment discrimination "case is *not required* to plead a prima facie case of discrimination in order to survive a motion to dismiss[,]" (Dkt. No. 27 at 15 (citation omitted)), she still must plead sufficient facts to give rise to a plausible claim for relief. *See Iqbal*, 555 U.S. at 678; 550 U.S. at 555. Accordingly, Plaintiff has failed to state a claim for wrongful discharge in violation of the FMLA and this cause of action must be dismissed.

2.      Second Cause of Action:  Age Discrimination

The second cause of action, which alleges that the adverse employment actions Plaintiff suffered constituted discrimination based on her age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634 (Dkt. No. 16 ¶¶ 52-58), also fails to state a claim.

The ADEA provides that all personnel decisions affecting federal employees who are at least 40 years of age shall be made free from discrimination based on age.  *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009).   To state a claim for age discrimination under the ADEA, a plaintiff must establish that (1) she was at least forty years old, (2) performing her job satisfactorily, (3) discharged, and (4) either replaced by a substantially younger employees with equal or inferior qualifications or discharged under circumstances giving rise to an inference of age discrimination.  *Diaz v. Eagle Produce, Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008).

Here, the FAC falls short in two respects.  First, Plaintiff has merely alleged in a conclusory manner that she "was qualified for the positions she held and performed her duties satisfactorily."  (Dkt. No. 16 ¶ 54.)  But the factual allegations and administrative record belie that point inasmuch as they indicated that she engaged in rather significant misconduct:  getting into her Postal Service vehicle while drunk and causing an accident.  Thus, her ADEA claim is meritless on this ground.  But even assuming that Plaintiff was satisfactorily performing her job, the claim still fails as written because the FAC does not contain any allegations that support the conclusory allegation that Plaintiff "was treated less favorably than those similarly situated employers who were not part of [her] protected class" of people over 40.  (Dkt. No. 16 ¶ 55.) First, she does not allege that the other three employees with whom she drank that fateful day are younger than she is, and the documents in her administrative file suggest that only one of these other postal workers was younger than Plaintiff.  (*See id.* Ex. B (noting that Crowley was 61, Acosta 49, and Brown 59 at the time of the incident).)  If two employees who are *older* than Plaintiff were not terminated, that would actually undermine any inference that Plaintiff was, in fact, terminated because of her age.  *See O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308,

312 (1996) (noting that all that matters for an age discrimination case is that a plaintiff is treated less favorably than someone younger than her, even if the other employee is still over 40 and part of the same protected class); *Shelley v. Green*, 666 F.3d 599, 608 (9th Cir. 2012) (same (citation omitted)).

What is more, there are no allegations in the FAC that other letter carriers were *similarly situated*.  While Plaintiff argued at the hearing that the three Postal Service employees she drank with on February 14, 2012 were not terminated, the fact that they were not terminated does not give rise to an inference of discrimination because the FAC does not allege that they were "engaged in similar activity"—*i.e.*, that they got to keep their jobs after getting behind the wheel of Postal Service vehicle while drunk, got in a collision involving several other cars, and subsequently pleaded guilty to a DUI.  Thus, Plaintiff fails to state a claim for age discrimination.

Plaintiff's arguments to the contrary are unavailing.  First, to the extent she argues that the relevant pleading standard requires only that the complaint give Defendant "fair notice of the basis of [the] age discrimination claim," (Dkt. No. 16 at 19), such is not the case.  As discussed above, while Plaintiff need not plead every element of a prima facie case of discrimination, she still must allege sufficient facts to state a plausible claim for relief, which Plaintiffs fail to do if she has not pleaded facts that suggest that particular employment actions were taken because of her age.  *See Morgan v. Napolitano*, No. CIV. S-09-2649 LKK/DAD, 2010 WL 3749260, at *6 (E.D. Cal. Sept. 23, 2010).   Contrary to Plaintiff's position, merely alleging that the plaintiff is over 40 and that other employees were not subject to the same employment action (Dkt. No. 27 at 19) is not enough to state a claim absent other facts that connect the employment action to her age; this Plaintiff has not done.  Accordingly, the second cause of action is dismissed for failure to state a claim.

### 3.   Third Cause of Action:  Disability Discrimination, Disparate Treatment

In the third cause of action, Plaintiff alleges that the Postal Service subjected her to disparate treatment because of a disability; in other words, she argues that the adverse actions at issue in the FAC constituted disability discrimination in violation of the Rehabilitation Act of

United States District Court
Northern District of California

1973, 29 U.S.C. §§ 706, 693.  (Dkt. No. 16 ¶¶ 59-64.)  Defendant contends that this cause of action must be dismissed because, in addition to being time-barred, the FAC does not include sufficient facts to support any of the elements required to prove a prima facie case of disability discrimination.  (Dkt. No. 24 at 26.)

Federal employees allege disability discrimination through Section 501 of the Rehabilitation Act, 29 U.S.C. § 791, which incorporates the prohibition against such discrimination of the Americans with Disabilities Act, 42 U.S.C. § 12111, among others.  29 U.S.C. § 791; *see Boyd v. United States Postal Serv.*, 752 F.2d 410, 413-14 (9th Cir. 1985).  When reviewing the sufficiency of disability discrimination claims under the Rehabilitation Act, courts incorporate the standards of the ADA.  *See Fleming v. Yuma Regional Med. Ctr.*, 587 F.3d 938, 939 (9th Cir. 2009).  To state a claim of disparate treatment under Section 501, a plaintiff would have to plead facts sufficient to plausibly "demonstrate that (1) she is a person with a disability (2) who is otherwise qualified for employment, and (3) suffered discrimination because of her disability."  *Walton v. U.S. Marshals Serv.*, 492 F.3d 998, 1005 (9th Cir. 2007) (citations omitted). Under the Rehabilitation Act, a plaintiff has a disability if she "has a physical or mental impairment which for such individual constitutes or results in a substantial impediment to employment," and "can benefit in terms of an employment outcome from vocational services[.]" 29 U.S.C. § 705(20).  A plaintiff may establish that she was discriminated against "by reason of" her disability by establishing that her disability was a "motivating factor" in an adverse employment action.  *Simmons v. Navajo Cnty.*, 609 F.3d 1011, 1021 (9th Cir. 2010).

Plaintiff's claim is insufficiently pleaded in a number of ways.  First, although Plaintiff has alleged enough facts for the court to conclude that she may qualify as disabled based on her various mental-health diagnoses (*see, e.g.*, Dkt. No. 16 ¶¶ 27-28, 39, 43 (depression), ¶ 18 (adjustment disorder with depressed mood), ¶¶ 33, 43 (bipolar disorder), ¶ 33 (childhood post-traumatic stress disorder), ¶ 45 (major depressive episode, severe but not psychotic)), she fails to specify which condition was purportedly the basis of a discriminatory employment action.  The FAC thus fails to comply with pleading standards.  *See McKenna v. Permanente Med. Grp., Inc.*,

United States District Court
Northern District of California

894 F. Supp. 2d 1258, 1278 (E.D. Cal. 2012) (finding that the complaint failed to state a claim for disability discrimination in part because the claims were "vague as to [the] alleged disability and fails to identify it precisely").

Even assuming for the purposes of this motion that Plaintiff had identified herself as a person with a disability, her claim still fails as written. First, the Court questions whether this or any of the other the causes of action can state a claim based on the 2011 AWOL designation, as placing an employee on AWOL status for two days, while disciplinary in nature, is not the type of event that constitutes an actionable adverse employment action unless there are allegations that the employee's return from AWOL resulted in a reduction in pay. *See, e.g.*, *Price v. Cal. Dep't of Corrs.*, No. CIVS041235FEBDADPS, at *5 (E.D. Cal. Mar. 21, 2006) (holding that an AWOL notice does not constitute an adverse employment action); *Harper v. Potter*, 456 F. Supp. 2d 25, 29 (D.D.C. 2006) (holding that a seven day suspension, while disciplinary in nature, was not an adverse employment action because plaintiff was able to return to the same job with the same pay status); *Douglas-Slade v. Lahood*, 793 F. Supp. 2d 82, 99 (D.D.C. 2011) (holding that placement on AWOL status for one day cannot sustain plaintiff's claim). The parties appear to agree, as does the Court, that the remaining employment actions alleged in the FAC—suspension, removal, and failure to reinstate—are adverse actions for the purposes of discrimination claims.

But with respect to any of the adverse actions, the FAC does not include facts that give rise to a plausible inference that Plaintiff was discriminated against because of a disability. As above, Plaintiff has failed to allege facts that support the inference she alleges: that she was "subject to adverse employment actions and treated less favorably than those similarly situated employees" who suffered from no disability. (Dkt. No. 16 ¶ 61.) Other than that conclusory allegation, Plaintiff has not alleged that other letter carriers who held the same position but did not suffer from depression (or any other condition, given the lack of clarity in the FAC) engaged in similar activity then kept their jobs; although she alleges that other postal service employees drank with her on February 14, 2012, the facts before the Court establish that only Plaintiff ended up getting in her Postal Service vehicle while drunk, causing a three-car accident, and pleading guilty to a

28

DUI.

Notably, as for the February 2012 Suspension, March 2012 Notice of Removal, and October 2013 Request for Reinstatement, which all arose out of Plaintiff's on-the-job DUI, the Ninth Circuit has made clear that an employee cannot state a claim under the Rehabilitation Act for disability discrimination based on adverse employment actions stemming from drunken conduct even where that conduct might be related to the employee's disability. *Newland v. Dalton*, 81 F.3d 904, 906 (9th Cir. 1996) (affirming district court's dismissal of Rehabilitation Act discrimination claim where plaintiff, who alleged that he suffered from alcoholism, was fired for firing an assault rifle in a bar while drunk). Put simply, "[t]he Rehabilitation Act does not immunize [a plaintiff] from the consequences of h[er] drunken rampage." *Id.* (citing *Collings v. Longview Fibre Co.*, 63 F.3d 828, 832-33 (9th Cir. 1995)). Other courts have also held that while the Rehabilitation Act protects employees from being fired because of their disability, "they are still responsible for conduct which would otherwise result in their termination." *Id.* (citations omitted); *see also Maddox v. Univ. of Tenn.*, 62 F.3d 843, 848 (6th Cir. 1995) (noting that an employer may discipline an employee for drunk driving even if the employee is disabled); *Despears v. Milwaukee Cnty.*, 63 F.3d 635, 637 (7th Cir. 1995) (finding that an employee disabled due to alcoholism was not discriminated against when he was fired after a drunk driving arrest because alcoholism did not compel driving the car). Thus, where, as here, a complaint alleges that the plaintiff was fired for misconduct, the plaintiff cannot claim disability discrimination by arguing that the disability caused that misconduct. *See id.* This is especially true given that the FAC does not allege that the Postal Service's stated reason for Plaintiff's termination was mere pretext for disability discrimination. Thus, to the extent that Plaintiff suggests in her opposition that her DUI was the Postal Service's "*stated reason* for suspension and termination" but may have been pretext (Dkt. No. 27 at 20), the facts alleged in the FAC fail to plausibly allege that such is the case. The FAC fails thus fails to allege that she suffered from discrimination because of her disability.

     4.      <u>Fourth Cause of Action:  Disability Discrimination, Failure to Accommodate</u>

Plaintiff's fourth cause of action, also a Rehabilitation Act claim, alleges that the Postal Service failed to accommodate her disability.  (Dkt. No. 16 ¶¶ 65-70.)  To state a prima facie case for failure to accommodate a disability, a plaintiff must show that (1) she is disabled, (2) she is a qualified individual, and (3) that a reasonable accommodation is possible.  *Zukle v. Regents of the Univ. of Cal.*, 166 F.3d 1041, 1045 (9th Cir. 1999); *Buckingham v. United States*, 998 F.2d 735, 739-40 (9th Cir. 1993).  A "reasonable accommodation" is defined as "modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position."  29 C.F.R. § 1630.2(o)(1)(ii).

First, as discussed in the previous section, Plaintiff has not clearly identified the disability upon which her discrimination claim is based, which renders the claim insufficiently pled.  *See McKenna v*, 894 F. Supp. 2d at 1278.  But equally problematic is that the FAC neither alleges that Plaintiff requested an accommodation from her employer nor identifies what a reasonable accommodation would be.  While a plaintiff need not plead every single element of a reasonable accommodation claim, her claim that the Postal Service denied her a reasonable accommodation simply cannot proceed absent facts that plausibly support these elements.  *See, e.g.*, *Anaya v. Marin Cnty. Sheriff*, No. , at *11 (N.D. Cal. Nov. 24, 2014) (dismissing plaintiff's failure to accommodate claim where plaintiff did not identify specific reasonable accommodations or why she needed them); *see also Davis v. Safeway, Inc.*, No. C-95-2759-VRW, 1996 WL 266128, at *6 (N.D. Cal. May 14, 1996) ("An employee's obligation to accommodate an employee's disability is [ ] not triggered until a request for accommodation is made.").  Accordingly, Plaintiff's cause of action for failure to accommodate a disability fails to state a claim upon which relief may be granted.

### 6.   Sixth Cause of Action:  Gender Discrimination

The final cause of action, which alleges that the adverse employment actions Plaintiff suffered constituted discrimination based on gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), meets the same fate.  (Dkt. No. 16 ¶¶ 52-58.)

To state a claim of gender discrimination, a plaintiff must allege that (1) she is female; (2) she performed her job adequately; (3) she suffered an adverse employment action; and (4) she was treated differently than similarly situated male employees who did not suffer the same adverse employment action. *Cornwell v. Electra Central Credit Union*, 439 F.3d 1018, 1031 (9th Cir. 2006). Here, the FAC is devoid of allegations of direct evidence of gender discrimination (such as a derogatory comment about Plaintiff's gender by a supervisor), *see, e.g.*, *EEOC v. Boeing Co.*, 577 F.3d 1044, 1050 (9th Cir. 2009), and of circumstantial evidence of gender discrimination (such as a similarly-situated male employee who was not terminated after pleading guilty to an on-the-job DUI). *See, e.g.*, *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1105-06 (9th Cir. 2008). Plaintiff has failed to allege that the Postal Service suspended, terminated, and refused to reinstate her while allowing male employees to remain on the job after engaging in comparable conduct. Just like Plaintiff's second cause of action for age discrimination, the FAC does not allege that the other male postal workers kept their jobs after engaging in "similar activity"; while the FAC and judicially noticeable documents indicate that the male letter carriers drank on February 14, 2012, they allege that only Plaintiff got behind the wheel of her Postal Service vehicle while drunk, caused a three-car accident, and pleaded guilty to a DUI. (*See* Dkt. No. 16 at Ex. B.) Nor has Plaintiff identified any instances of other male letter carriers keeping their jobs after engaging in such behavior. Absent such allegations, the facts alleged do not give rise to an inference of gender discrimination. *See Surrell*, 518 F.3d at 1105-06. Accordingly, this cause of action also must be dismissed for failure to state a claim.

## CONCLUSION

For the reasons described above, the Court concludes that it has jurisdiction over the claims in the FAC, and therefore DENIES Defendant's 12(b)(1) motion, but GRANTS Defendant's 12(b)(6) motion without prejudice to filing a Second Amended Complaint.

The claims that Plaintiff alleged in the 2013 EEO Complaint are time-barred; thus, the second through sixth causes of action are dismissed with leave to amend to the extent that they challenge the adverse actions complained of in that administrative challenge. Should Plaintiff

wish to further amend these causes of action, Plaintiff should keep in mind that she must allege facts that give rise to a plausible inference that she sought EEO counseling within 45 days or that there are grounds for equitable tolling.

The first, second, third, fourth, and sixth causes of action otherwise fail to state a claim and are dismissed with leave to amend. Should Plaintiff wish to amend these claims, she is reminded that she must allege facts that give rise to a plausible inference of discrimination based on each protected characteristic. Plaintiff is free to exclude from the Second Amended Complaint any causes of action she no longer wishes to bring.

Plaintiff's Second Amended Complaint, if any, shall be filed by April 22, 2015. Failure to file a Second Amended Complaint may result of dismissal of these causes of action with prejudice.

This Order disposes of Dkt. No. 24.

**IT IS SO ORDERED**.

Dated:  March 3, 2015

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge