1

2

3

4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

7

ILIANA LACAYO,

Plaintiff,

8

v.

9

PATRICK R. DONAHOE,

10

Defendant.

11

Case No. 14-cv-04077-JSC

**ORDER RE: MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Re: Dkt. No. 43

12

13         In this postal-worker employment suit, Plaintiff Iliana Lacayo ("Plaintiff"), proceeding pro

14    se and *in forma pauperis*, alleges that her civil rights were violated when her employer, the United

15    States Post Office, run by Defendant Postmaster General Megan J. Brennan ("Defendant"),

16    terminated her employment.  The Court granted Defendant's motion to dismiss all but one claim

17    (for retaliation) in the First Amended Complaint ("FAC") for failure to state a claim, finding

18    Plaintiff's claims under the Family Medical Leave Act ("FMLA"), age discrimination in violation

19    of the Age Discrimination in Employment Act, disability discrimination under the Rehabilitation

20    Act, gender discrimination in violation of Title VII of the Civil Rights Act ("Title VII")

21    insufficiently pleaded.  *See Lacayo v. Donahoe*, No. 14-cv-4077-JSC, 2015 WL 993448, at *1

22    (N.D. Cal. Mar. 4, 2015).

23         Plaintiff has since filed a Second Amended Complaint ("SAC"); she no longer brings age

24    and gender discrimination claims, but the FMLA, disability discrimination, and retaliation claims

25    remain.  (Dkt. No. 42.)  Defendant moves to dismiss all four claims in the SAC, contending that

26    the newly added allegations fail to cure the defects identified in the Court's Order dismissing the

27    FAC and that the retaliation claim also fails to state a claim as pleaded.  (Dkt. No. 43.)  Having

28    carefully considered the parties' submissions, the Court concludes that oral argument is

United States District Court
Northern District of California

unnecessary, *see* Civ. L.R. 7-1(b), and GRANTS Defendant's motion to dismiss as set forth below.

## BACKGROUND

**A.     Factual Background**

The factual background of this case was detailed extensively in the Court's Order granting Defendant's motion to dismiss the FAC, which the Court incorporates here in full. *Lacayo*, 2015 WL 993448, at *1-4. The Court will not reiterate the entire factual background here. Suffice it to say that this action pertains to Plaintiff's 2012 termination from her employment as a Letter Carrier in a San Francisco branch of the Post Office that occurred in the wake of an incident in which Plaintiff pleaded guilty to a DUI after an on-the-job drinking-and-driving incident in her Post Office vehicle.

Plaintiff's claims relate to two administrative claims she filed with the Postal Service's Equal Employment Opportunity Office ("EEO"). First, Plaintiff filed a 2013 EEO Complaint alleging race, national origin, sex, and disability discrimination based on the Post Office's following three actions: (1) a November 7, 2011 decision finding Plaintiff AWOL; (2) a February 15, 2012 decision to place her on off-duty, non-pay status of Emergency Placement—effectively, a suspension; and (3) a March 29, 2012 Notice of Removal that became effective on June 8, 2012. The Post Office dismissed Plaintiff's 2013 EEO Complaint and upheld her termination. Plaintiff then requested reinstatement to her old position. When that request was denied, Plaintiff filed a 2014 EEO Complaint contending that the Postal Service's failure to respond to her request for reinstatement constituted retaliation for filing the 2013 EEO Complaint and discrimination on the basis of race, national origin, sex, age, and disability. The SAC includes four causes of action: (1) violation of the FMLA; (2) disparate treatment disability discrimination under the Rehabilitation Act; (3) failure to accommodate a disability in violation of the Rehabilitation Act; and (4) retaliation, or reprisal, for engaging in protected activity in violation of Title VII. (*See* Dkt. No. 42.)

The Court previously granted Defendant's motion to dismiss without prejudice for failure to state a claim upon which relief could be granted. The Court concluded that the claims raised in

United States District Court
Northern District of California

Plaintiff's 2013 EEO Complaint were time-barred for failure to seek counseling within 45 days as the relevant statutes require, and therefore dismissed all but the FMLA claims to the extent that they challenge the adverse actions complained of in that administrative complaint.  With respect to this administrative exhaustion issue, the Court cautioned Plaintiff that "she must allege facts that give rise to a plausible inference that she sought EEO counseling within 45 days or that there are grounds for equitable tolling" or risk dismissal of the unexhausted claims with prejudice.  *Lacayo*, 2015 WL 993448, at *18.  The Court further advised Plaintiff that any repleaded claims must "allege facts that give rise to a plausible inference of discrimination based on each protected characteristic."  *Id.*  The Court also noted that Plaintiff was "free to exclude from the [SAC] any causes of action she no longer wishes to bring."  *Id.*

Plaintiff thereafter filed the SAC, which reiterates many of the factual allegations and most of same claims raised in the preceding complaints except for gender and age discrimination, which she no longer alleges.  Defendant moved to dismiss the SAC on May 6, 2015, contending that Plaintiff had neither cured the administrative exhaustion problem nor alleged sufficient facts to make her substantive discrimination claims plausible.  (Dkt. No. 43.)  Plaintiff missed her deadline to oppose the motion, submitting her opposition nearly two weeks late.  (Dkt. No. 45.)  Although untimely, "in light of Plaintiff's pro se status and the Court's own preference to resolve matters on the merits," the Court considered Plaintiff's late opposition and gave Defendant additional time to file a reply.  (Dkt. No. 46.)  The motion is now fully briefed.

## LEGAL STANDARD

A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A facial plausibility standard is not a "probability requirement" but mandates "more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted).  For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party."  *Manzarek v. St. Paul Fire & Mar. Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  "[D]ismissal may be based on

United States District Court
Northern District of California

either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotation marks and citations omitted); *see also Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law.").

Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), under which a party is only required to make "a short and plain statement of the claim showing that the pleader is entitled to relief," a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."), *cert. denied*, 132 S. Ct. 2101 (2012). The court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 663-64.

Pro se pleadings are generally liberally construed and held to a less stringent standard. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In *Hebbe v. Pliler*, 627 F.3d 338 (9th Cir. 2010), the Ninth Circuit held that courts must still liberally construe pro se filings post-*Iqbal* noting that "[w]hile the standard is higher, our obligation remains, where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt." *Id.* at 342 (internal quotation marks and citations omitted). Nevertheless, the Court may not "supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

# DISCUSSION

## A.     Extra-Pleading Materials

As in the Order dismissing the FAC, the Court must consider the admissibility of a variety of extra-pleading materials that Defendant has submitted.  When adjudicating a motion to dismiss brought pursuant to Rule 12(b)(6), the Court's consideration of extra-pleading materials is limited.  Normally, the Court cannot consider matters outside of the pleading without converting the motion into one for summary judgment.  *See* Fed. R. Civ. P. 12(b)96); *see also Ramirez v. United Airlines, Inc.*, 416 F. Supp. 2d 792 ,795 (N.D. Cal. 2005) ("[M]aterials outside the pleadings ordinarily are not considered on a motion to dismiss[.]" (citation omitted)).  However, courts may consider documents alleged in a complaint and essential to a plaintiff's claims.  *See Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994); *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295 (9th Cir. 1998).  A court may also "take judicial notice of documents on which allegations in the complaint *necessarily* rely, even if not expressly referenced in the complaint, provided that the authenticity of those documents is not in dispute[,]" *Tercica, Inc. v. Insmed, Inc.*, No. C 05-5027 SBA, 2006 WL 1626930, at *8 (N.D. Cal. June 9, 2006) (citing *In re Autodesk, Inc. Sec. Litig.*, 132 F. Supp. 2d 833, 837-38 (N.D. Cal. 2000)), and may take judicial notice of matters of public record, *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010), including "records and reports of administrative bodies."  *Mack v. So. Bay Beer Distribs.*, 798 F.2 1279, 1282 (9th Cir. 1986), *abrogated on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991).  In the context of employment discrimination in particular, courts may judicially notice the administrative record of a plaintiff's claims before the EEOC.  *See, e.g.*, *Lacayo* 2015 WL 993448, at *9 (collecting cases).  The Court previously judicially noticed documents pertaining to Plaintiff's administrative proceedings that Defendant submitted in support of its motion to dismiss the FAC.  *Id.* at *10.  For the same reasons set forth in that Order, at Defendant's request the Court does so again here.  (*See* Dkt. No. 43 at 11 n.1.)  Once again, however, the Court notices only the existence of the administrative proceedings and the agency's findings and does not credit the truth of any fact recounted or matter asserted in the documents.  *See In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1070 (N.D. Cal 2010) (taking judicial notice of a complaint but not

1    "of the substance of that [document] for the truth of any matter asserted" therein).

2    **B.      Administrative Exhaustion (Second and Third Causes of Action)**

3            Federal law directs an employee to exhaust her administrative remedies before pursuing

4    employment discrimination claims in district court.  The second through fourth claims in

5    Plaintiff's SAC, brought pursuant to the Rehabilitation Act and Title VII, are subject to these

6    exhaustion requirements.  *See Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 832-33 (1976)

7    (Rehabilitation Act); *Vinieratos v. Dep't of the Air Force*, 939 F.2d 762, 773-75 (9th Cir. 1991)

8    (Title VII).  Among these requirements is an aggrieved employee's obligation to contact an EEO

9    counselor within 45 days of the alleged discriminatory conduct.  *See* 29 C.F.R. § 1614.105(a).

10           The Court addressed exhaustion when reviewing the FAC.  The Court found that Plaintiff

11   had substantially complied with the presentment requirement by filing the 2013 EEO Complaint,

12   but the claims therein were time-barred.  *Lacayo*, 2015 993448, at *11. Specifically, the

13   administrative record demonstrated, and Plaintiff conceded, that her first actual request for EEO

14   counseling occurred "276 days after the latest dated adverse employment action mentioned in the

15   2013 EEO Complaint."  *Id.*  The Court noted that Plaintiff conceded that she did not timely seek

16   counseling, and further concluded that Plaintiff had failed to allege sufficient facts to plausibly

17   allege grounds to equitably toll the 45-day counseling window on the basis of lack of knowledge

18   or incapacity.  *Id.*

19           Turning to the SAC, Plaintiff now alleges that she attempted to seek EEO counseling at the

20   wrong EEO Office in June 2012.  (Dkt. No. 21 ¶ 5 (alleging that a friend "brought Plaintiff to the

21   EEO office at 350 Embarcadero in June 2012 and filled [out] the pre-complaint counseling forms

22   for Plaintiff" but Plaintiff was told to go to the USPS EEO office because she was a federal

23   employee); *id.* ¶ 40 (alleging that Plaintiff then tried to go to the USPS EEO office to file her

24   request for counseling but was denied entry by USPS Manager Cecilia Denton); *id.* ¶ 41 (alleging

25   that Plaintiff went to the USPS on June 15, 2012 to meet with a management official about filing a

26   complaint or appeal of her termination).)  These dates fall within 45 days the effective date of June

27   8, 2012—the effective date of Plaintiff's March 2012 Notice of Removal.  (*See id.* ¶ 32.)

28   Therefore, as Defendant concedes, Plaintiff has sufficiently alleged that she timely sought

United States District Court
Northern District of California

6

counseling for the March 2012 Notice of Removal within the 45-day statutory window.

However, this June 2012 request is not within 45 days of the other two adverse actions complained of in the 2013 EEO Complaint—November 2011 AWOL letter and the February 2012 suspension—and Defendant again contends that Plaintiff cannot challenge these actions because she failed to seek counseling within the 45-day window and therefore claims arising out of these adverse actions are time-barred. (*See* Dkt. No. 43 at 19.)

As with the FAC, the allegations in the SAC do not give rise to equitable tolling based on Plaintiff's lack of knowledge of the 45-day requirement; here, as before, Plaintiff nowhere contends that she was unaware of the statutory request-for-counseling requirement. To the contrary, as before

> throughout the administrative record she indicates that she had knowledge of the 45-day requirement based on her past EEO experience and the fact that her employer visibly posted a notice of these requirements in her break room, and she does not contest this statement. Thus, equitable tolling is not appropriate here based on ignorance of the regulatory requirement.

*Lacayo*, 2015 WL 993448, at *11 (citing *Loeorna v. U.S. Dep't of State*, 105 F.3d 548, 551 (9th Cir. 1997)). Thus, as was the case with the FAC, the SAC does not include facts that plausibly establish a basis for equitable tolling based on ignorance of the regulatory requirement.

Plaintiff next argues, as she did in the context of the FAC, that the Court should equitably toll the 45-day regulatory reporting window because she was incapacitated during the relevant time period due to her "various [mental health] diagnoses" in the SAC. (Dkt. No. 45 at 14.) Incapacitation due to mental incompetence may equitably toll administrative deadlines. *Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999). However, as the Court explained in its Order dismissing the FAC,

> [o]ther courts have rejected plaintiffs' attempts to seek equitable tolling to save otherwise time-barred claims on the grounds of depression and anxiety where the plaintiff had not submitted evidence to support incapacitation and the allegations in the complaint indicate that the plaintiff was competent enough to enforce other legal rights, like a worker's compensation claim.

*Lacayo*, 2015 WL 993448, at *11 (citation omitted). The SAC includes allegations that, during

United States District Court
Northern District of California

1   the time period at issue, Plaintiff was able to lodge an administrative challenge to her AWOL

2   notification, to obtain an estate lawyer for matters pertaining to her ex-husband's estate, to file a

3   grievance challenging her suspension, to apply for state disability benefits through the appeals

4   process, and to file for unemployment insurance benefits.  (Dkt. No. 42 ¶¶ 25-26, 27, 30, 38, 42.)

5   Because the SAC alleges that Plaintiff was able to enforce these other legal rights, she has not

6   shown that equitable tolling of the 45-day period based on incapacity is appropriate.  *See Golez v.*

7   *Potter*, No. 09cv0965 AJB (WMC), 2011 WL 4914870, at *7 (S.D. Cal. Oct. 17, 2011).

8           Plaintiff's argument to the contrary is unavailing.  Plaintiff insists that the SAC still alleges

9   incapacitation despite her pursuit of these other legal rights and remedies because she required the

10  assistance of others, including her friend Martha Ortega and her mother, to pursue them.  (*See* Dkt.

11  No. 45 at 13; *see also* Dkt. No. 42 ¶¶ 38, 40, 42).)  Even if plaintiff required the assistance of

12  others to apply for state disability benefits, insurance benefits, or pursue other legal rights, the

13  availability of such assistance and plaintiff's apparent ability to use that assistance to pursue her

14  rights weighs against equitable tolling, as it indicates she could have utilized the very same

15  assistance to timely seek counseling.  *See Harris v. Virga*, No. 2:12-cv-02846-LKK-AC, 2014 WL

16  51135, at *11 (E.D. Cal. Jan. 6, 2014)(addressing equitable tolling in the AEDPA context and

17  noting that "[e]ven if petitioner required the assistance of other inmates to file those petitions, the

18  availability of such assistance and petitioner's apparent ability to utilize that assistance weigh

19  against equitable tolling." (citation omitted)); *see also Jones v. Stephens*, 998 F. Supp. 2d 529, 535

20  (N.D. Tex. 2014) (also in the AEDPA context, noting that petitioner "contends he had help with

21  [pursuing other legal rights] shows only that he knows to ask for help; it does not demonstrate that

22  his allegedly poor mental health . . . prevented him from doing anything." (citing *Blount v. Biter*,

23  No. SACV 12-865 VBF (AN), 2012 WL 3150943, at *6 (C.D. Cal. Aug. 1, 2012))).

24          Thus, because the SAC alleges that Plaintiff did not seek counseling in a timely manner

25  and does not contain facts that plausible allege equitable tolling based on either ignorance of the

26  regulatory requirement or incapacitation, the November 2011 AWOL letter and the February 2012

27  suspension are time-barred, and therefore not actionable in this lawsuit.

28          Lastly, Plaintiff has added to the SAC allegations pertaining to two other discriminatory

United States District Court
Northern District of California

8

incidents: that she was not paid for 64 hours of sick leave in October 2011, and that she was assigned "double casing"—*i.e.*, twice the workload—in the months preceding the DUI incident. (Dkt. No. 42 ¶ 63.)  Neither of these incidents is mentioned in Plaintiff's administrative complaints, so Plaintiff did not substantially comply with the presentment requirement as to these actions.  *See Kraus*, 572 F.3d at 1044.  Nor is it alleged that Plaintiff requested counseling for these incidents.  Even if she did, Plaintiff's only conceded request for counseling falls far outside the 45-day period from these incidents, so any such counseling request would be untimely, and there is no ground for tolling as discussed above.

Accordingly, Plaintiff's claims arising out of the November 2011 AWOL letter, the February 2012 suspension, the October 2011 failure to pay 64 hours of sick leave, and the double casing prior to February 2012 are time-barred for failure to request counseling within 45 days, as Plaintiff has failed to plead facts to plausible establish grounds for equitable tolling of that statutory window.  Thus, Plaintiff's second and third causes of action alleging discrimination may only proceed as to the March 2012 Notice of Removal; the discrimination causes of action are dismissed to the extent they allege on the November 2011 AWOL letter and February 2012 suspension.[1]

## C.    Sufficiency of Claims

The Court now considers whether Plaintiff otherwise states a claim upon which relief may be granted.  Defendant contends that all four causes of action must be dismissed for failure to state a claim.  The Court will address each cause of action in turn.

### 1.    *First Cause of Action: FMLA Claim*

In the first cause of action, Plaintiff contends that the Postal Service's termination of her employment violated the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601-2654, because

---

[1] However, these other adverse actions may still be used as evidence as they remain relevant to her claims.  *See United Airlines, Inc. v. Evans*, 431 U.S. 553, 558 (1977) (discriminatory act upon which timely charges not brought may be relevant background evidence but is not legally actionable); *Raad v. Fairbanks No. Star Borough Sch. Dist.*, 323 F.3d 1185, 1192 (9th Cir. 2003) (noting that the factual allegations of time-barred claims may remain relevant to a plaintiff's live, actionable claims).

it constituted retaliation for denying Plaintiff FMLA leave to care for herself and her daughter. (Dkt. No. 42 ¶¶ 51-60.)

The FMLA makes it unlawful for any covered employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise" an eligible employee's right to protected FMLA leave. 29 U.S.C. § 2615(a). Put another way, the FMLA creates "two interrelated substantive rights": (1) the "right to use a certain amount of leave for protected reasons," and (2) the "right to return to his or her job or an equivalent job after using protected leave." *Bachelder v. Am. W. Airlines*, 259 F.3d 1112, 122 (9th Cir. 2001) (citation omitted). The latter right may be violated if the employer "interfere[s] with, restrain[s] den[ies] an employee's exercise or attempt to exercise those rights . . . or retaliate[s] or discriminate[s] against an employee . . . for participating in FMLA proceedings or inquiries." *Bonzani v. Shinseki*, No. CIV S-11-0007 EFB, 2011 WL 4479758, at *6 (E.D. Cal. Sept. 26, 2011).

Either way, FMLA leave must be at issue. *See Litson v. ITS Dep't of Bus. & Indus.*, 311 F. App'x 1000, 1002 (9th Cir. 2009); *Marchisheck v. San Mateo Cnty.*, 199 F.3d 1068, 1070 (9th Cir. 1999) (same). The FMLA provides that "an eligible employee shall be entitled to a total of 12 work-weeks of leave during any 12-month period . . . in order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition" or "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 26 U.S.C. § 2612(a)(1). A serious health condition is "an illness, injury, impairment, or physical or mental condition that involves (A) in patient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a heath care provider." 29 U.S.C. § 2611(11). For the FMLA to cover outpatient treatment, the condition at issue must involve either a period of incapacity of at least 3 consecutive days and treatment two or more times by a provider or a chronic serious health condition that results in a period of incapacity. *Marchisheck*, 199 F.3d at 1074 (citation omitted). "Incapacity," in turn, is defined as "inability to work, attend school or perform other regular daily activities due to the serious health condition[.]" *Id.* (citation omitted).

In its Order dismissing the FMLA claim from the FAC, the Court concluded that Plaintiff's

United States District Court
Northern District of California

10

United States District Court
Northern District of California

FMLA claim suffered from a number of pleading defects.  *See Lacayo*, 2015 WL 993448, at \*13.  First, the FAC did not make clear what type of FMLA claim Plaintiff was bringing.  *Id.*  More importantly, the FAC did not plausibly allege that Plaintiff was entitled to FMLA leave.  With respect to alleged FMLA leave to care for Plaintiff's daughter, the Court noted that "[t]here are no factual allegations regarding a particular condition that Plaintiff's daughter suffered from, let alone the treatment Plaintiff's daughter required."  *Id.*  With respect to FMLA leave for her own medical needs, the Court acknowledged that the FAC identified mental health conditions that Plaintiff suffered from and for which she sought treatment, but concluded that "Plaintiff has not alleged facts that plausibly establish that the Postal Service terminated her because of" days she was marked AWOL when she should have been entitled to FMLA leave.  *Id.*  To the contrary, the Court noted, "Plaintiff's own description of her claim belies this fact" because "she contends she was she was fired because of the DUI incident."  *Id.* (record citation omitted).  For these reasons, the Court concluded that the FAC failed to allege that her "termination was motivated by or meant to punish any request for FMLA leave[.]"  *Id.*

The SAC contains some additional allegations pertaining to the FMLA claim.  Plaintiff now makes clear that she brings both interference *and* retaliation claims: (1) interference inasmuch as Defendant denied FMLA leave on several occasions in October and November 2011 (Dkt. No. 42 ¶ 54); and (2) retaliation for taking leave insofar as Defendant's stated reason for terminating Plaintiff's employment—*i.e.*, the DUI incident—was mere pretext for FMLA retaliation.  (*See* Dkt. No. 42 ¶¶ 56-58.)  As written, the SAC fails to state either claim.

Both are subject to the same elements: "[w]hen a plaintiff alleges retaliation for exercise of FMLA rights, that claim is properly analyzed as an interference claim under section 2651(a)(1)."  *Rivera v. FedEx Corp.*, No. C 12-1098 PJH, 2013 WL 6672401, at \*6 (N.D. Cal. Dec. 18, 2013) (citing *Bachelder*, 259 F.3d at 1124).  To state a claim for interference, a plaintiff must allege the following: (1) she is an eligible employee; (2) her employer is covered under the FMLA; (3) she was entitled to take leave; (4) she gave notice of her intention to take leave; and (5) the defendant denied her the benefits to which she was entitled under the FMLA.  *Sanders v. Newport*, 657 F.3d 772, 778 (9th Cir. 2011).  Plaintiff's SAC does not allege sufficient facts to plausibly establish

1  these elements.

2      As before, Plaintiff sufficiently alleges the first two elements: her eligibility and her

3  employer's status as a covered employer under the FMLA.  But once again, the third and fourth

4  elements are problematic as Plaintiff either fails to allege sufficient facts to plausibly establish that

5  she was entitled to leave or that she gave notice of her intention to take such FMLA leave.

6  Plaintiff alleges two separate bases for FMLA leave in the SAC: her own "serious health

7  condition" and that of her daughter.

8      Taking all of the allegations in the SAC as true and drawing all inference in Plaintiff's

9  favor, she has alleged facts sufficient to create a plausible inference that she suffered from a

10  "serious health condition."  Specifically, the SAC is replete with Plaintiff's various mental health

11  diagnoses.  (*See, e.g.*, Dkt. No. 42 ¶¶ 19, 23, 33, 34, 45- 47, 49.)  Plaintiff has alleged, albeit in a

12  conclusory manner, that she was incapacitated for a period of more than 3 days when her health

13  care provider placed her off of work between October 1, 2011 and October 19, 2011.  (*Id.* ¶ 52.)

14  She has also alleged that a Kaiser physician treated her on October 18 and 24, 2011.  (*Id.*)  This is

15  enough to allege a "serious health condition" for the purposes of the FMLA.  *See Marchisheck*,

16  199 F.3d at 1074 (citation omitted).

17      But Plaintiff has not alleged any facts that she notified her employer that she was suffering

18  from a serious health condition warranting FMLA leave, which the law requires.  *See* 29 C.F.R. §

19  825.302(c) (plaintiff's notice to her employer must be "sufficient to make the employer aware that

20  the employee needs FMLA qualifying leave").  "The critical question is whether the information

21  imparted to the employer is sufficient to reasonably apprise it of the employee's request to take

22  time off for a serious health condition."  *Escriba v. Foster Poultry Farms*, 793 F. Supp. 2d 1147,

23  1160-61 (E.D. Cal. 2011) (citation omitted); *see also Mora v. Chem-Tronics, Inc.*, 16 F. Supp. 2d

24  1192, 1209 (S.D. Cal. 1998) (same); *see also Lee v. U.S. Steel Corp.*, 450 F. App'x 834, 837 (11th

25  Cir. 2012) (noting that "while an employee need not expressly mention the FMLA, he must prove

26  "at least verbal notice sufficient to make the employer aware of both the need for qualifying leave

27  and its anticipated timing and duration" (citations omitted)).

28      Absent from the SAC is any indication that Plaintiff ever notified her employer or

United States District Court
Northern District of California

12

otherwise indicated that she was suffering from these illnesses and requested leave for that reason. While Plaintiff is correct that she need not specifically request FMLA leave in order to allege entitlement thereto, *see* 29 C.F.R. § 825.302(c), she still must say enough to put the employer on notice that she would be so entitled.  Far from putting her employer on notice that she suffered from a serious health condition, the facts alleged in the FAC merely indicate that she told her employer that she needed time to arrange her ex-husband's funeral and be with her daughter (Dkt. No. 42 ¶ 13), that there were complications with the burial (*id.* ¶ 14), that "what Plaintiff had to do was taking longer than anticipated" (*id.* ¶ 17), that her daughter was "very distraught about her father's death," which "impacted 'all of us[,]'" (*id.* ¶ 21), and that Plaintiff "asked for help or assistance, and told [her supervisor] she wanted to go home as she did not feel good[,]" (*id.* ¶ 25). "Although the Ninth Circuit does not appear to have addressed this issue, many other federal courts have held that bereavement leave or absence from work following the death of a family member is not protected under the FMLA." *Torres v. Inspire Dev. Ctrs.*, No. 13-cv-3062-TOR, 2014 WL 3697816, at *5 (E.D. Wash. July 24, 2014) (colleting cases).  And the mere notification that Plaintiff was not feeling well on a given day due to concerns about bereavement likewise is not sufficient notice of an FMLA-qualifying serious health condition.

Plaintiff's FMLA claims fare no better to the extent they are premised on the need to care for her daughter, as the SAC still does not include facts sufficient to plausibly establish that her daughter suffered from a particular "serious health condition."  Plaintiff offers the purely conclusory allegation that her daughter "had a 'serious health condition' as defined by the FMLA" (Dkt. No. 42 ¶ 53), but such conclusory allegations plainly do not comply with the pleading standards set forth in *Iqbal* and *Twombly*.  *See Rains v. Newmont USA Ltd.*, No. 3::12-cv-00517-MMD-VPC, 2014 WL 4810317, at *3 (D. Nev. Sept. 29, 2014) (noting that the conclusory assertion that the plaintiff "suffered from a 'serious health condition'" is insufficient).  But Plaintiff also alleges that her daughter "went into shock, became very distraught, and was devastated" due to her father's death and that her daughter "had a period of incapacity, an inability to perform her regular daily activities for at least three consecutive days" and was treated at least twice by a particular health care provider.  (Dkt. No. 42 ¶¶ 12, 53.)  Even if the allegations of

13

1     shock and distress, coupled with conclusory allegations of incapacity, were sufficient, Plaintiff's

2     claim that she was entitled to FMLA leave based on her daughter's condition fails for another

3     reason.  Plaintiff alleges that she was entitled to FMLA leave in October 2011 based on her

4     daughter's condition, but the SAC alleges that her daughter did not seek medical care until March

5     2012.  (Dkt. No. 42 ¶ 53.)  To state a claim for relief under the FMLA, the complaint must allege

6     that the medical visits occurred during the period in which the individual was incapacitated.  *See*

7     *King v. Permanente Med. Grp.*, Civ. No. 2:13-01560 WBS, AC, 2013 WL 5305907, at *6 (E.D.

8     Cal. Sept. 19, 2013) (collecting cases).  Thus, Plaintiff's allegations that her daughter was

9     incapacitated due to distress and shock in October 2011 following Plaintiff's ex-husband's death

10    and that she sought medical treatment in March 2012 is insufficient to make out a claim under the

11    FMLA.  Moreover, Plaintiff nowhere alleges that she informed the Postal Service of her

12    daughter's condition in such a way that would put the Postal Service on notice of her entitlement

13    to FMLA leave.

14          Absent the type of condition and notice that would trigger an entitlement to FMLA in the

15    first instance, Plaintiff's allegation that her termination was pretext for punishing her for taking

16    FMLA leave is a non-starter.  The SAC therefore fails to state a claim of retaliatory termination or

17    interference with the FMLA.

18          2.      *Second Cause of Action: Disparate Treatment Disability Discrimination*

19          In the second cause of action, Plaintiff alleges that the Postal Service subjected her to

20    disparate treatment because of a disability; in other words, she argues that the adverse actions at

21    issue in the SAC constituted disability discrimination in violation of the Rehabilitation Act of

22    1973, 29 U.S.C. §§ 706, 693.  (Dkt. No. 42 ¶¶ 62-66.)

23          This was the third cause of action in Plaintiff's FAC, which the Court dismissed because

24    "in addition to being time-barred, the FAC does not include sufficient facts to support . . . the

25    elements required to prove a prima facie case of disability discrimination."  *Lacayo*, 2015 WL

26    993448, at *15.  To state a claim of disparate treatment disability discrimination, a plaintiff would

27    have to plead facts sufficient to plausibly "demonstrate that (1) she is a person with a disability (2)

28    who is otherwise qualified for employment, and (3) suffered discrimination because of her

disability." *Walton v. U.S. Marshals Serv.*, 492 F.3d 998, 1005 (9th Cir. 2007) (citations omitted). The Court concluded that the FAC failed to specify which of Plaintiff's conditions was purportedly the basis of a discriminatory employment action and did not include facts that give rise to a plausible inference that Plaintiff was discriminated against because of her disability. *Id.* Plaintiff contends that the allegations in the SAC have cured these defects, but the Court's review indicates otherwise.

Starting with the first element—that Plaintiff is a person with a disability—Plaintiff now clarifies that Defendant "discriminating against her for having adjustment disorder with depressed mood, depression, anxiety disorder, and[ ] longstanding bipolar disorder, [and] childhood history of posttraumatic stress disorder[.]" (Dkt. No. 42 ¶ 63.) Thus, the SAC now sufficiently identifies the condition that serves as the basis of the discrimination claim.

Even assuming that Plaintiff is "otherwise qualified for employment" to satisfy the second element, her claim grinds to a halt at the third: that she suffered discrimination *because of* a disability. *See Walton*, 492 F.3d at 1005. Plaintiff alleges that she was "subject to adverse employment actions and treated less favorably than those similarly situated employees who were not part of Plaintiff's protected class." (Dkt. No. 42 ¶ 63.) She specifies that "Defendant failed to pay Plaintiff 64 hours of sick leave and discriminated against her for having [certain mental health conditions] when other USPS workers who did not have such condition were treated better in that their sick leave hours were paid, and they were not subjected to double casing that Plaintiff was subject to[.]" (*Id.*) Thus, the sole adverse actions alleged in the FAC with respect to Plaintiff's disability discrimination claim are the unpaid sick leave and double casing assignments; Plaintiff's opposition indicates that it is only the 64 hours of sick leave on which her claim is based. (Dkt. No. 45 at 14.) However, as described in detail above, these claims are time-barred . *See supra* Section B. Plaintiff's FAC therefore fails to state a plausible claim that she suffered actionable discrimination because of her disability.   Accordingly, the Court GRANTS Defendant's motion to dismiss this claim.

> 3. *Third Cause of Action: Failure to Accommodate Disability Discrimination*

Plaintiff's third cause of action in the SAC alleges that Defendant failed to accommodate

1   her disability and instead terminated her employment.  (Dkt. No. 42 ¶¶ 67-75.)  To state a prima

2   facie case for failure to accommodate a disability, a plaintiff must show that (1) she is disabled, (2)

3   she is a qualified individual, and (3) that a reasonable accommodation is possible, but instead the

4   employer terminated her because of the disability.  *Zukle v. Regents of the Univ. of Cal.*, 166 F.3d

5   1041, 1045 (9th Cir. 1999); *Nunez v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir. 1999)

6   (citation omitted).  A "reasonable accommodation" is defined as "modifications or adjustments to

7   the work environment, or to the manner or circumstances under which the position held or desired

8   is customarily performed, that enable a qualified individual with a disability to perform the

9   essential functions of that position."  29 C.F.R. § 1630.2(o)(1)(ii).

10   "The employer's knowledge of the physical [or] mental limitations resulting from the

11   employee's disability is a prerequisite to the employer's obligation to make reasonable

12   accommodations."  *Foster v. City of Oakland*, No. C-08-01944 EDL, 2008 WL 3286968, at *2

13   (N.D. Cal. Aug. 5, 2008) (citations omitted); *see also Davis v. Safeway, Inc.*, No. C-95-2759-

14   VRW, 1999 WL 266128, at *4 (N.D. Cal. May 16, 1996) (citation omitted).  Put another way, "the

15   employee has the burden of giving the employer notice of the disability, and an employer has no

16   duty to accommodate a disability of which it has no knowledge[.]"  *Alatorre v. Wastequip Mfg.*

17   *Co.*, No. 2:12-cv-02394-MCE, 2013 WL 796717, at *5 (E.D. Cal. Mar. 4, 2013) (internal

18   quotation marks and citations omitted).

19   The Court dismissed the failure to accommodate claim in Plaintiff's FAC finding that she

20   both failed to clearly identify the disability upon which her discrimination claim was based, and

21   did not allege facts indicating that her employer had knowledge of the need for accommodation or

22   that Plaintiff had made any such requests, nor did Plaintiff "identif[y] what a reasonable

23   accommodation would be."  *Lacayo*, 2015 WL 993448, at *17.  Plaintiff contends that she has

24   added sufficient allegations to the SAC to cure these defects.

25   First, Plaintiff now clearly has specified the mental health disabilities upon which her

26   reasonable accommodation claim is based: she lists a number of mental health-related diagnoses to

27   serve as the predicate disability for her claim.  (Dkt. No. 42 ¶ 68.)

28   Although not strong, the SAC ekes out just enough facts to state a plausible claim that her

*United States District Court*
*Northern District of California*

16

United States District Court
Northern District of California

employer was notified of her disability.  Plaintiff identifies several paragraphs of the SAC that, in her view, suffice to show that she put Defendant on notice of her disability such that an accommodation was necessary (*see* Dkt. No. 45 at 16), but the majority of these references are unavailing.  For example, Plaintiff alleges that she "requested accommodation beginning October 2011, with further requests in the following months by her and her co-workers . . . in February 2012 and March 2012."  (Dkt. No. 42 ¶ 71.)  This conclusory allegation is insufficient under *Iqbal* and *Twombly*.  Plaintiff likewise contends that the factual allegations of paragraphs 14, 21, and 24 of the FAC put the Postal Service on notice of her disability, but none of these paragraphs mention Plaintiff's diagnoses or even symptoms thereof.  Instead, they allege that Plaintiff sought time off relating to plan the funeral and burial of her ex-husband and to grieve his death.  Paragraphs 25 and 27 are similarly insufficient, as they only generally allege that Plaintiff "did not feel good" or "was not well" and "asked for help."  However, Paragraph 28 sufficiently alleges notice: Plaintiff alleges that between October 2011 and February 2012—before the DUI incident—her supervisor noticed that she was "going through depression as she was not mentally focused" and that her supervisor and another Postal Service employee suggested that the supervisor "consider some form of assistance to Plaintiff[.]"  Viewed in the light most favorable to Plaintiff, this allegation is enough to plausibly infer that Defendant knew that Plaintiff was suffering from depression.

But Plaintiff nowhere alleges that she requested an accommodation, besides vague and general requests for "help" or "assistance."  Moreover, her allegations fail to plausibly establish the reasonableness of the accommodations she names.  The SAC alleges that the accommodation would have been non-driving jobs—*i.e.*, a letter carrier that operates exclusively on foot and "receptionist-type of positions."  (*See* Dkt. No. 42 ¶ 69.)  Plaintiff has not alleged facts sufficient to establish why the proposed accommodation is reasonable to accommodate her mental health diagnoses of depression or bipolar disorder.

To the extent that Plaintiff is alleging that she was disabled to due alcoholism and *that* is what required the non-driving accommodation, while such condition may be a protected disability under the ADA only where it substantially limits one or more major life activities, *see Thompson v. Davis*, 295 F.3d 890, 896 (9th Cir. 2002), such a claim would still fail for several reasons.  First,

17

the Ninth Circuit has long held that "reasonable accommodation" is limited in scope in the context of alcoholism, and it does not require the accommodations Plaintiff lists here. *See Fuller v. Frank*, 916 F.2d 558, 561-62 (9th Cir. 1990).[2]  Second, there are no allegations in the complaint that any such condition substantially limited one or more of Plaintiff's major life activities, and driving is not a major life activity that would lead to a finding of disability. *See Mandujano v. Geithner*, No. C 10-01126 LB, 2011 WL 2550621, at *4 (N.D. Cal. June 27, 2011) (citations omitted). Moreover, there are no allegations in the SAC that Plaintiff ever brought alcoholism to her employer's attention—certainly not before the DUI incident—so the claim would fail for lack of notice and lack of a requested accommodation. *See Foster*, 2008 WL 3286968, at *2; *see also Davis*, 1999 WL 266128, at *4.

However, Plaintiff has alleged throughout the SAC that she sought time off.  In her opposition, she modifies her ADA claim to allege that a reasonable accommodation may include a modified work schedule or leaves of absence, provided that the leave would permit the employee to perform the essential functions of her job upon her return.  (Dkt. No. 45 at 16 (citing 29 C.F.R. § 1614.203(c) and *Humphrey v. Mem. Hosps. Ass'n*, 239 F.3d 1128, 1136 (9th Cir. 2001).  But Plaintiff does not allege in the SAC that the reasonable accommodation was a leave of absence, and the Court does not consider allegations first alleged in the opposition to a motion to dismiss.

Moreover, consistent with the discussion in Section B, *supra*, Plaintiff may only proceed with a failure to accommodate claim to the extent it is exhausted—*i.e.*, requests to accommodate made within 45 days of Plaintiff's June 2012 request for counseling.  *See Rand. v. Geithner*, 609 F. Supp. 2d 97, 101 (D.D.C. 2009) (noting that a plaintiff must exhaust a failure to accommodate

---

[2] Specifically, "reasonable accommodation" for alcoholism "requires that a governmental employer follow a profession of increasingly severe responses to an employer's alcoholism[,]" taking the following steps:

> (1) inform the employee of available counseling services; (2) provide the employee with a "firm choice" between treatment and discipline; (3) afford an opportunity for inpatient treatment, if outpatient treatment fails; and (5) absent special circumstances, discharge the employee for any further relapse.

*Fuller v. Frank*, 916 F.2d 558, 562 (9th Cir. 1990).

18

United States District Court
Northern District of California

1    claim by contacting an EEO counselor within 45 days of the failure to accommodate).  Thus, only

2    requests for accommodation made in May 2012 and later are actionable.  This is where Plaintiff's

3    claim fails: there are no allegations that Plaintiff sought accommodation past March of that year.

4    And even if there were, federal law does not impose on an employer a duty to provide reasonable

5    accommodation for an employee once the employee has engaged in conduct that calls for

6    termination, even where the conduct is a direct result of the alleged disability.  For example, as

7    one district court explained, "[r]easonable accommodation does not extend to accommodating an

8    alcoholic employee's showing up for work under the influence of alcohol or drinking on the job."

9    *Flynn v. Raytheon Co.*, 868 F. Supp. 383, 387 (D. Mass. 1984), *cited with approval by Daft v.*

10   *Sierra Pac. Power Co.*, 251 F. App'x 480, 482 (9th Cir. 2007).  Any requests for accommodation

11   that Plaintiff made within the 45-day statutory window would have postdated her on-the-job DUI,

12   meaning that her employer was not required to provide accommodation at all.  Thus, Plaintiff has

13   failed to state a claim that Defendant discriminated against her by failing to provide reasonable

14   accommodation for her disability.

15       4.      *Fourth Cause of Action: Reprisal for Engaging in Protective Activity*

16       Plaintiff's final cause of action alleges the Defendant retaliated against Plaintiff for

17   engaging in protected activity in violation of Title VII.  (Dkt. No. 42 ¶¶ 76-80.)  To state a

18   cognizable claim for retaliation, a plaintiff must allege: "(1) she engaged in an activity protected

19   by Title VII; (2) her employer subjected her to an adverse employment action; and (3) a causal

20   link exists between the protected activity and the adverse action."  *Bleeker v. Vi Isack*, 468 F.

21   App'x 731, 732 (9th Cir. 2012); *Thomas v. City of Beaverton*, 379 F. 3d 802, 8011 (9th Cir. 2004).

22       In the SAC, Plaintiff alleges that she filed administrative complaints under the

23   Rehabilitation Act, the FMLA, *and* Title VII, and "[b]y virtue of [that] conduct . . . , Plaintiff was

24   subjected to unlawful retaliatory conduct which commence subsequent to having engaged in

25   protected activity and [from] which a retaliatory motive can be inferred."  (Dkt. No. 42 ¶¶ 77-78.)

26   In and of itself, this allegation is too vague to state a claim consistent with Rule 8(a) because it

27   does not name the administrative complaints that served as the predicate "protected activity," and

28   it does not name the adverse action alleged to be retaliatory.  (*See id.*)  However, Plaintiff's 2014

United States District Court
Northern District of California

1   EEO Complaint—the administrative challenge that exhausted the retaliation cause of action—

2   makes these things clear.  First, the 2013 EEO Complaint—to the extent that it included gender

3   and age discrimination claims under Title VII—is the underlying "protected activity" at issue.[3]

4   The 2014 EEO Complaint also makes clear the adverse employment action at issue: that the Postal

5   Service refused to consider her October 2013 request for reinstatement in retaliation for her having

6   filed the 2013 EEO Complaint.[4]  (*See* Dkt. Nos. 25-11, 25-12.)  In support of this theory, the SAC

7   also alleges that "USPS manager [of] customer service Celia Denton refused to consider Plaintiff's

8   October 2013 request for reinstatement by failing to process it and admittedly lost said request."

9   (Dkt. No. 42 ¶ 50.)

10          These allegations are sufficient to plausibly allege the first two elements of retaliation—

11   that Plaintiff engaged in activity protected under Title VII and the Postal Service subjected her to

12   an adverse employment action.  *Thomas*, 379 F.3d at 8011; *Madrid v. Cnty. of Apache*, 289 F.

13   App'x 155, 159 (9th Cir. 2008) (noting that refusal to reinstate an employee is an adverse

14   employment action for the purposes of a Title VII retaliation claim (citation omitted)); *Hsieh v.*

15   *Peake*, No. C 06-5281 PJH, at *15 (N.D. Cal. Mar. 25, 2008) (assuming that a failure to

16   "reinstate" employee to former job is an adverse employment action, but finding such claim time-

17   barred).  Whether SAC states a plausible claim for relief comes down to whether Plaintiff has

18   alleged facts to give rise to a plausible inference that the Postal Service's failure to reinstate her

19   was *because of* her prior protected activity—*i.e.*, causation.

20          The causal link may be established by direct evidence or "inferred from circumstantial

21   evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and

22   _____

23   [3] Indeed, although Plaintiff's SAC references other protected activity under the FMLA and
     Rehabilitation Act, as well, Plaintiff brings her retaliation claim under Title VII, which protects

24   only an employee's prior actions relating to a Title VII claim.  *See Thomas*, 379 F.3d at 811; *Hines*
     *v. Cal. Pub. Utils. Comm'n*, No. C-10-3813 EMC, 2011 WL 1302918, at *4 (N.D. Cal. Apr. 5,

25   2011) (citing 42 U.S.C. §§ 2000e-2, 2000e-3).

26   [4] Indeed, in the FAC Plaintiff conceded that her retaliation claim—identically worded to the
     retaliation claim here—was limited to that protected activity and that adverse employment action,

27   just as she does here.  (*See* Dkt. No. 15 ¶¶ 71-76; Dkt. No. 40 at 16.)  *See also Lacayo*, 2015 WL
     993448, at *12.

28

1  the proximity in time between the protected action and the allegedly retaliatory employment

2  decision." *Yartzoff v. Thomas*, 809 F.2d 1371, 1375 (9th Cir. 1987); *Manatt v. Bank of Am., N.A.*,

3  339 F.3d 792, 802 (9th Cir. 2003).  Causation will only be inferred from timing alone if the

4  proximity is "very close[,]" *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (per

5  curiam), such that the "adverse employment action follows on the heels of protected activity."

6  *Villiarimo v. Aloha Island Air*, 281 F.3d 1054, 1065 (9th Cir. 2002).  Courts have held that a 3-

7  month gap is enough to give rise to a plausible inference of causation at the pleading stage, *see,*

8  *e.g.*, *Gordon v. Hughes*, No. 2:13-cv-01072-JAD-GWF, 2015 WL 1549141, at *2 (D. Nev. Apr. 8,

9  2015), but 9 months is too far apart to give rise to a plausible inference of causation.  *See, e.g.*,

10  *Manatt*, 339 F.3d at 802; *Heyer v. Governing Bd. of Mt. Diablo Unified Sch. Dist.*, 521 F. App'x

11  599, 601 (Apr. 3, 2013).  Indeed, Plaintiff appears to concede that there is no temporal proximity

12  sufficient to establish causation under the circumstances presented.  (*See* Dkt. No. 40 at 18.)

13         Plaintiff has not alleged any other facts to show that there is a connection between her

14  protected activity and the Postal Service's refusal to rehire her.  The mere conclusory allegation

15  that the failure to rehire was unlawful retaliation for earlier protected activity is not enough.  *See,*

16  *e.g.*, *Knox v. Donohoe*, No. C-11-2596 EMC, 2012 WL 949030, at *9 (N.D. Cal. Mar. 20, 2012)

17  ("There mere fact that the [adverse actions] took place after [plaintiff's protected activity] is not

18  sufficient by itself to give rise to an inference of a causal link."); *Fresquez v. Cnty. of Stanislaus*,

19  No. 1:13-cv-1897-AWI-SAB, 2014 WL 1922560, at *5 (E.D. Cal. May 14, 2014).  Notably, the

20  sole factual allegation in the SAC pertaining to this claim—that Celia Denton did not consider and

21  lost Plaintiff's application for reinstatement—is not enough, as Plaintiff has not alleged a basis

22  from which the Court can plausibly infer that her refusal to consider the application was *caused* by

23  retaliatory motive.  Such causation could be alleged by "comments corroborating these incidents

24  to any retaliatory motive[,]" *Knox*, 2012 WL 949030, at *9 (footnote omitted), or the employer's

25  decision-maker engaging in a "pattern of antagonism following the protected conduct," *Johnson v.*

26  *United Continental Holdings, Inc.*, No. C-12-2730-MMC, 2013 WL 6354210, at *5 (N.D. Cal.

27  Dec. 5, 2013).  Plaintiff's retaliation claim therefore fails to survive Defendant's motion to

28  dismiss.

United States District Court
Northern District of California

21

1    Plaintiff's argument to the contrary is unavailing.  Plaintiff insists that the SAC sufficiently

2    states a claim of retaliation because she need not prove a prima facie case of causation and,

3    relatedly, has no obligation to show how she will prove causation at the pleading stage.  (*See* Dkt.

4    No. 45 at 17-18.)  The Court rejected similar arguments that Plaintiff made regarding her pleading

5    requirements in its Order dismissing the FAC, noting that "Plaintiff's conception of the relevant

6    pleading standard misses the mark [because] *Iqbal* and *Twombly* eliminated mere notice pleading,

7    and instead plainly require a plaintiff to plead facts sufficient to give rise to a plausible claim for

8    relief."  *Lacayo*, 2015 WL 993448, at *14.  Once again, "while Plaintiff is correct that a plaintiff

9    . . . is not required to plead a prima facie case of discrimination [or retaliation] in order to survive

10   a motion to dismiss, she still must plead sufficient facts to give rise to a plausible claim for relief."

11   *Id.* (internal quotation marks, alterations, and citations omitted).  Accordingly, Plaintiff has failed

12   to state a claim for retaliation in violation of Title VII and this cause of action must be dismissed.

**D.    Leave to Amend**

14   Generally, when a complaint is dismissed, "leave to amend shall be freely given when

15   justice so requires."  *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir.2010); *see*

16   Fed. R. Civ. P. 15(a).  The Ninth Circuit has "repeatedly held that a district court should grant

17   leave to amend even if no request to amend the pleading was made, unless it determines that the

18   pleading could not possibly be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d

19   1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).  However, leave to

20   amend may be denied "where the amendment would be futile."  *Gardner v. Martino*, 563 F.3d

21   981, 990 (9th Cir. 2009).  Further amendment may be denied as futile where a plaintiff has already

22   amended the complaint once.  *See Semiconductor Energy Lab Co., Ltd. v. Yujurio Nagata*, No. C

23   11–02793 CRB, 2012 WL 177557, at *8 n.6 (N.D. Cal. Jan. 23, 2012) (citing *Bonin v.*

24   *Calderon*, 59 F.3d 815, 845 (9th Cir.1995)).

25   Plaintiff has already amended her claims twice.  However, the Court only addressed the

26   sufficiency of the claims once, as Plaintiff filed the FAC as of right in response to Defendant's

27   first motion to dismiss.  Still, the Court's Order clearly identified the deficiencies in the FMLA

28   and disability discrimination claims and explained how Plaintiff could cure them, but she has

United States District Court
Northern District of California

failed articulate plausible claims.  The Court therefore concludes that further amendment would be futile.

The Court will, however, grant Plaintiff leave to amend to allege further facts in support of her retaliation claim arising from the Postal Service's refusal to consider her October 2013 request for reinstatement, as this is the first occasion at which the Court has addressed the causation issue.

## CONCLUSION

For the reasons described above, the Court GRANTS Defendant's motion to dismiss.  This dismissal is with prejudice as to the FMLA and ADA causes of action.  However, Plaintiff shall have leave to amend the retaliation claim consistent with the discussion above.  Plaintiff's Third Amended Complaint, if any, shall be filed by July 27, 2015.  Failure to file a Third Amended Complaint may result in dismissal of Plaintiff's remaining cause of action with prejudice.

**IT IS SO ORDERED.**

Dated:  June 22, 2015

JACQUELINE SCOTT CORLEY
United States Magistrate Judge