UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ILIANA LACAYO, <br>     Plaintiff, <br><br> v. <br><br> MEGAN J. BRENNAN,[1] <br>     Defendant. | Case No. 14-cv-04077-JSC <br><br> **ORDER GRANTING MOTION TO DISMISS THIRD AMENDED COMPLAINT** <br><br> Re: Dkt. No. 50 |

In this postal-worker employment suit, Plaintiff Iliana Lacayo ("Plaintiff"), proceeding pro se, alleges that her civil rights were violated when her former employer, the United States Post Office, refused to rehire her as a mail carrier following her termination related to an on-the-job DUI incident. The Court previously granted Defendant's motion to dismiss all claims in the Second Amended Complaint ("SAC") for failure to state a claim. *See Lacayo v. Donahoe*, No. 14-cv-04077-JSC, 2015 WL 3866070, at *1 (N.D. Cal. June 22, 2015) ("*Lacayo II*"). The Court dismissed Plaintiff's claims under the Family and Medical Leave Act and Americans with Disabilities Act with prejudice, but granted Plaintiff leave to amend her refusal-to-rehire retaliation claim under Title VII of the Civil Rights Act ("Title VII").[2] *Id.* at *13. Defendant now moves to dismiss the sole remaining claim on the grounds that the newly added allegations still fail to cure the defects identified in the Court's Order dismissing the SAC. (Dkt. No. 50.) Having

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), current Postmaster General Brennan is automatically substituted in this action for the former Postmaster Patrick R. Donahoe. The Court orders the Clerk to update the docket to reflect this change.

[2] Plaintiff initially brought age and gender discrimination claims under the Age Discrimination in Employment Act and Title VII, respectively. The Court found these claims insufficiently pleaded in the First Amended Complaint, and Plaintiff did not replead them in her SAC. *See Lacayo II*, 2015 WL 3866070, at *1.

1  carefully considered the parties' submissions, and having had the benefit of oral argument on
2  September 17, 2015, the Court GRANTS Defendant's motion to dismiss as set forth below.

## FACTUAL BACKGROUND

The factual background of this case has been detailed extensively in the Court's prior Orders granting Defendant's motion to dismiss the First Amended Complaint ("FAC") and SAC, which the Court incorporates here in full. *See Lacayo II*, 2015 WL 3866070, at *1-2; *Lacayo v. Donahoe*, No. 14-cv-4077-JSC, 2015 WL 993448, at *1-4 (N.D. Cal. Mar. 4, 2015) ("*Lacayo I*"). The following allegations are relevant to the remaining retaliation claim.

Plaintiff filed three EEO complaints that she contends led the Postal Service to retaliate by refusing to rehire her: one in 2011, one in 2013, and one in 2014. (Dkt. No. 49 ¶ 51.) The first occurred in March 2011, when Plaintiff filed a formal administrative complaint against her then-supervisor Warren Lo for non-sexual harassment and sex discrimination, and sought removal of certain disciplinary action from her personnel record. (*Id.* ¶¶ 9-10.) The 2011 EEO Complaint was closed the same month, when Lo retired. (*Id.* ¶ 10.)

The second two EEO Complaints relate to Defendant's termination of Plaintiff's employment as a letter carrier in 2012. In February 2012 Plaintiff was involved in an on-the-job drinking-and-driving incident in which she pleaded guilty to a DUI. *Lacayo II*, 2015 WL 3866070, at *1. (*See also* Dkt. No. 49 ¶¶ 28, 51.) At some point that Spring, at the urging of Plaintiff's union, the Postal Service offered to rehire Plaintiff as a foot carrier—*i.e.*, to restore her to her Letter Carrier position but without the use of a Postal Service vehicle—on the condition that she return to work within 10 days. (*Id.* ¶ 51; *see also id.* ¶ 42.) Plaintiff sought an extension of that deadline because she was too ill to return to work given myriad mental health diagnoses. (*Id.* ¶¶ 45-47, 51.) The Postal Service "remained silent" in the face of that request. (*Id.* ¶ 51.) In June 2012 Plaintiff's termination became effective. (*Id.* ¶¶ 30-31.) Nearly a year later, in March 2013, Plaintiff sought EEO counseling (Dkt. No. 25-3) and in June 2013 filed a formal EEO Complaint alleging race, national origin, sex, and disability discrimination based on, among other things, the termination of her employment. (Dkt. No. 25-5.) Ultimately, the Postal Service dismissed Plaintiff's 2013 EEO Complaint and upheld her termination. (Dkt. No. 25-6; Dkt. No. 49 at 21-

24.)[3]

On October 24, 2013, Plaintiff sent a letter to her former supervisor, Postal Service customer service manager Cecilia Denton, requesting reinstatement to her former position as a Letter Carrier. (Dkt. No. 49 ¶ 42.) The Postal Service ignored the request. (*Id.*) On January 14, 2014, Plaintiff filed the 2014 EEO Complaint contending that the Postal Service's failure to respond to her request for reinstatement constituted retaliation for filing the 2013 EEO Complaint. (*Id.* ¶ 50.) Specifically, Plaintiff alleges that "Denton refused to consider Plaintiff's October 2013 request for reinstatement by failing to process it and admittedly lost said request." (*Id.*) Ultimately, an administrative law judge formally denied the complaint on October 29, 2014. (*Id.*; *see also id.* at 26-48.)

Plaintiff contends that the Postal Service "could have paid somebody else to drive Plaintiff to do her route, [but] refused to do so in retaliation for Plaintiff's three EEO claims in 2011, 2013, and 2014." (*Id.* ¶ 51.) To support that theory, Plaintiff cites to a newspaper article reporting that a Postal Service truck driver in Pennsylvania was given a paid chauffeur to allow him to perform his letter carrier job during his 18-month driver's license suspension due to multiple drunk driving convictions. (*Id.*; *see also id.* at 51-52.)

## PROCEDURAL HISTORY

The Court previously granted Defendant's motion to dismiss the retaliation claim from the SAC, noting that the cause of action was too vague to comply with Rule 8(a) as it failed to identify the administrative complaints that served as the predicate "protected activity" and otherwise failed to allege facts that give rise to a plausible inference that the Postal Service's failure to reinstate her was *because of* her protected activity—*i.e.*, causation. *Lacayo II*, 2015 WL 3866070, at *11-12. Plaintiff thereafter filed the TAC, which includes a single cause of action for reprisal for engaging in protected activity. (*Id.* ¶¶ 52-60.)

Defendant moved to dismiss the TAC on August 10, 2015, contending that the TAC still fails to allege sufficient facts to state a plausible claim of retaliation. (Dkt. No. 50.) Plaintiff

---

[3] Page numbers throughout refer to those that the Court's electronic filing system automatically assign.

missed her deadline to oppose the motion.  Although this is the second time that Plaintiff has done so, in light of her pro se status and the Court's preference to resolve matters on the merits, the Court ordered Plaintiff to respond by September 14, 2015.  (Dkt. No. 52.)  Plaintiff did so.  (Dkt. No. 53.)  The Court heard oral argument on September 17, 2015.

## LEGAL STANDARD

A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A facial plausibility standard is not a "probability requirement" but mandates "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted).  For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Mar. Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  "[D]ismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotation marks and citations omitted); *see also Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law.").

Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), under which a party is only required to make "a short and plain statement of the claim showing that the pleader is entitled to relief," a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."), *cert. denied*, 132 S. Ct. 2101 (2012).  The court must be able to "draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 663-64.

Pro se pleadings are generally liberally construed and held to a less stringent standard. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In *Hebbe v. Pliler*, 627 F.3d 338 (9th Cir. 2010), the Ninth Circuit held that courts must still liberally construe pro se filings post-*Iqbal* noting that "[w]hile the standard is higher, our obligation remains, where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt." *Id.* at 342 (internal quotation marks and citations omitted). Nevertheless, the Court may not "supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

## DISCUSSION

To state a claim for retaliation, a plaintiff must allege: "(1) she engaged in an activity protected by Title VII; (2) her employer subjected her to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action." *Bleeker v. Vilsack*, 468 F. App'x 731, 732 (9th Cir. 2012); *Thomas v. City of Beaverton*, 379 F.3d 802, 811 (9th Cir. 2004).

### A.  Plaintiff's TAC Plausibly Alleges the First Two Elements

As the Court previously determined, Plaintiff plausibly alleges the first two elements of retaliation—that Plaintiff engaged in activity protected under Title VII and the Postal Service subjected her to an adverse employment action (refusal to reinstate Plaintiff to her former position).

There is some dispute as to which of Plaintiff's administrative complaints serves as the "protected activity" for the purposes of the retaliation claim. Plaintiff's administrative complaint of retaliation alleges that the refusal to rehire was in retaliation for her having filed the 2013 EEO Complaint. (*See* Dkt. No. 49 at 26 (Ex. B).) Plaintiff now alleges that the refusal to rehire was also motivated by the 2011 EEO Complaint and 2014 EEO Complaint. As a matter of logic, the

5

1    2014 EEO Complaint cannot serve as the protected activity underlying the refusal to rehire, as the
2    2014 EEO Complaint was not filed until *after* the refusal to rehire, not the other way around. *See,*
3    *e.g.*, *Zhang v. Walgreen Co.*, No. C 09-05921 JSW, 2010 WL 4922650, at *9 (N.D. Cal. Nov. 29,
4    2010) ("[Plaintiff] fails to state a retaliation claim based on her complaint to the [agency], because
5    she filed that complaint *after* her request for reinstatement had been denied.") (emphasis in
6    original).  As for the 2011 EEO Complaint, Defendant urges that the retaliation claim must be
7    limited to the complaint Plaintiff raised before the agency—*i.e.*, only the 2013 EEO Complaint.
8    Plaintiff, for her part, urges that the protected activity is not subject to exhaustion requirements, so
9    she can include earlier protected activity now even if it was not explicitly alleged in her
10   administrative complaint.

11   A federal court complaint "may encompass any discrimination like or reasonably related to
12   the allegations of the EEOC charge." *Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 636
13   (9th Cir. 2002) (citation omitted).  Thus, the Court can consider allegations that "fell within the
14   scope of the EEOC's *actual* investigation or an EEOC investigation which *can reasonably be*
15   *expected* to grow out of the charge of discrimination [or retaliation]." *Id.* (citing *B.K.B. v. Maui*
16   *Police Dep't*, 276 F.3d 1019, 1100 (9th Cir. 2002)).  When a plaintiff contends that her employer
17   retaliated against her for engaging in protected activity, it is reasonable to expect the agency to
18   consider all of the plaintiff's earlier protected activity, not just the particular incident named in the
19   complaint.  The Court will therefore consider the 2011 EEO Complaint as well.[4]  Thus, the scope
20   of the retaliation claim at issue is that Defendant retaliated against Plaintiff in October 2013
21   because she filed an EEO Complaint in 2013 and in October 2011.

22   **B.     Plaintiff's TAC does not Plausibly Allege Causation**

23   The dispositive issue is whether Plaintiff has alleged facts sufficient to establish the third
24   element of a retaliation claim—causation.  She has not.

---

[4] The TAC alleges that the 2011 EEO Complaint alleged sex discrimination and harassment. (Dkt. No. 49 ¶ 10.)  Sex discrimination and harassment arise under Title VII and can therefore serve as the underlying "protected activity" for Plaintiff's Title VII retaliation claim.  *See Thomas v. City of Beaverton*, 379 F.3d 802, 811 (9th Cir. 2004) (Title VII retaliation claims can only be brought based on protected activity under that statute); *Hines v. Cal. Pub. Utils. Comm'n*, No. C-10-3813 EMC, 2011 WL 1302918, at *4 (N.D. Cal. Apr. 5, 2011) (citing 42 U.S.C. §§ 2000e-2, 2000e-3).

1. *The 2013 Complaint*

Causation can be inferred from timing alone if the proximity is "very close[,]" *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (per curiam), such that the "adverse employment action follows on the heels of protected activity." *Villiarimo v. Aloha Island Air*, 281 F.3d 1054, 1065 (9th Cir. 2002). While there is no bright line rule as to the amount of time required to show temporal proximity, *see Coszalter v. City of Salem*, 320 F.3d 968, 977-78 (9th Cir. 2003), the Ninth Circuit has held that a time lapse of nearly 6 months between the protected activity and the adverse employment action, on its own, is insufficient to show causation, and it examined case law in which lapses of 4 or 5 months were deemed insufficient. *Villiarimo*, 281 F.3d at 1065 (citing, *e.g.*, *Filipovic v. K&R Express Sys., Inc.*, 176 F.3d 390, 398-99 (7th Cir. 1999) (4 months too long); *Conner v. Schnuck Mkts., Inc.*, 121 F.3d 1390, 1395 (10th Cir. 1997) (same); *Vollmar v. Int'l Bus. Machs. Corp.*, No. C-11-0629 MMC, 2012 WL 3731512, at *8 (N.D. Cal. Aug. 28, 2012) (5 months too long for retaliation under FEHA); *cf. Brown v. Potter*, 457 F. App'x 668, 673 (9th Cir. Nov. 3, 2011) (noting that a five-month delay is enough to suggest a causal connection for a prima facie case of retaliation).

Here, Plaintiff initiated her EEO counseling in March 2013 and made a formal complaint in June 2013. Defendant argues that temporal proximity must be measured from Plaintiff's protected activity in March 2013 to the time of the adverse action in October 2013. (Dkt. No. 50 at 11, 13.) The Court is not so sure. Plaintiff alleges that her former supervisor, Cecilia Denton, retaliated by refusing to reinstate her. The pleadings do not establish that Denton became aware in March 2013 that Plaintiff sought EEO counseling; they do establish that she was aware at the latest of Plaintiff's discrimination allegations in late May 2013 when Denton submitted an affidavit in connection with Plaintiff's EEO proceedings. (Dkt. No. 25-7.) *See Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982) ("Essential to a causal link is evidence that the employer was aware that the plaintiff had engaged in the protected activity."). None of Plaintiff's pleadings or any of the judicially-noticeable documents establishes that Denton, or any other relevant decisionmaker, was aware of the EEO counseling activity in March.

If the May/June 2013 date is used as the date of the protected activity, the temporal

proximity between the protected activity and the adverse employment action is close to where courts sometimes conclude there is a sufficient inference of a causal connection between the two. But not so here. Plaintiff alleges that in the Spring of 2012, well before her June 2013 EEO complaint, Defendant offered to reinstate Plaintiff to a non-driving letter carrier position if she returned to work in 10 days. (Dkt. No. 49 ¶ 51.) Plaintiff was unable to accept the reinstatement offer due to health reasons, and the Postal Service ignored Plaintiff's request for an extension of the return-to-work date. (*Id.*) In October 2013, Plaintiff sought reinstatement under the terms the Postal Service had previously offered with respect to driving and the Postal Service ignored that request. (*Id.* ¶¶ 42, 51.) Plaintiff urges that the only thing that changed between Spring 2012— when the Postal Service offered her the foot carrier job—and her October 2013 refused request is that she filed the 2013 EEO Complaint. This, she argues, implies that the refusal to consider the October 2013 was retaliatory. The problem with this argument is that Plaintiff does not allege that the Postal Service did anything different *after* the 2013 EEO Complaint than it did *before* the 2013 EEO Complaint. Before the 2013 EEO Complaint, the Postal Service offered Plaintiff a foot carrier position if she returned to work immediately but declined Plaintiff's request to extend the return-to-work date, albeit through silence. After the EEO Complaint it maintained that position, once again through silence. In other words, both before and after the filing of the June 2013 EEO Complaint, Defendant refused to consider what essentially amounted to a counteroffer from Plaintiff to return to the position at a later—or much later—date. Thus, Plaintiff's allegations do not give rise to a plausible inference that the Postal Service refused Plaintiff's October 2013 request for reinstatement in retaliation for Plaintiff having filed the June 2013 EEO Complaint, even when temporal proximity is considered.

Plaintiff's allegations of a pattern of hostility between Plaintiff and Denton also do not support a plausible inference of retaliation. According to the TAC, Denton denied Plaintiff's requests for sick leave or FMLA leave in 2011 (Dkt. No. 49 ¶¶ 19, 20); Plaintiff told a friend she was "stress[ed] from abuse at work from" Denton that caused her to become more depressed, but provides no factual allegations describing the abuse (*id.* ¶ 36); Denton refused Plaintiff entry into the Postal Service building throughout the spring of 2012. (*Id.* ¶ 39.) But all of these incidents

occurred prior to the filing of the June 2013 EEO Complaint, and there are no allegations that plausibly establish a connection between those incidents and Plaintiff's protected activity.

   2.  *The 2011 Complaint*

  Plaintiff's allegations are also insufficient to support a plausible connection between the October 2011 EEO Complaint and the decision two years later to deny (or ignore) Plaintiff's request for reinstatement. First, the complaint was made a full two years before the alleged refusal to reinstate. Moreover, even after Plaintiff filed that 2011 EEO Complaint, Defendant allegedly offered Plaintiff her job back in Spring 2012, much closer to when Plaintiff initially filed the 2011 EEO Complaint, even though Defendant was not required to do so. There are otherwise no facts connecting the 2013 refusal to rehire to that 2011 sexual harassment complaint that plausibly establish a retaliatory motive connecting the two.

* * *

  Ultimately, causation in retaliation claims must be decided "in light of the timing and the surrounding circumstances." *Coszalter*, 320 F.3d at 978. These surrounding circumstances may include "comments corroborating [the] incidents to any retaliatory motive[,]" *Knox v. Donohoe*, No. C-11-2596-EMC, 2012 WL 949030, at *9 (N.D. Cal. Mar. 20, 2012) (footnote omitted), or allegations that the employer's decision-maker engaged in a "pattern of antagonism following the protected conduct[.]" *Johnson v. United Continental Holdings, Inc.*, No. C-12-2730-MMC, 2013 WL 6354210, at *5 (N.D. Cal. Dec. 5, 2013). The allegations here, however, even when considered as a whole and drawing all reasonable inferences in Plaintiff's favor, are insufficient to support a plausible inference that Defendant's refusal to reinstate Plaintiff's employment in October 2013 was connected to her 2011 and/or 2013 EEO Complaints. Plaintiff's belief that Defendant should have treated her more fairly in light of her 26 years of service, however sincerely held, cannot satisfy her burden of making factual allegations that "taken as true . . . plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216.

//

//

**CONCLUSION**

For the reasons explained above, Defendant's motion to dismiss is GRANTED. As a general rule, leave to amend should be granted if it appears possible that the defects in the complaint could be corrected, particularly where the plaintiff is pro se. *Lopez*, 203 F.3d at 1130-31. However, leave to amend need not be granted, even to a pro se litigant, where further amendment would be futile. *McQuillon v. Schwarzenegger*, 269 F.3d 1091, 1099 (9th Cir. 2004). "The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *In re Vantine Corp. Sec. Litig.*, 283 F.3d 1079, 1097-98 (9th Cir. 2002) (internal quotation marks and citation omitted); *see also Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010) (district court may deny a plaintiff leave to amend if the plaintiff had several opportunities to amend its complaint and repeatedly failed to cure deficiencies).

Here, Plaintiff has already had multiple opportunities to amend. The Court earlier identified the defects with the retaliation claim—namely, causation—and specifically instructed Plaintiff as to what would be needed to adequately allege a causal link, *Lacayo II*, 2015 WL 3866070, at *11-12, but Plaintiff has not done so. Although, in her opposition, Plaintiff requests leave to amend in the event the Court finds the retaliation claim insufficiently pleaded, she offers no indication of the how any further amendment could save her claim, instead urging that her claims are sufficiently pleaded as written. Under these circumstances, the Court concludes that further amendment would be futile. The Court therefore declines to grant Plaintiff a fourth opportunity to amend, which would amount to a fifth pleading in this case and dismisses the case with prejudice.

As discussed at the hearing on September 17, 2015, Defendant shall advise the Court in writing on or before September 24, 2015 whether it is amenable to a settlement conference in light of some of the comments made by Plaintiff at the hearing. The Court will withhold final judgment until it hears from Defendant.

//

//

This Order terminates Docket No. 50.

**IT IS SO ORDERED.**

Dated: September 21, 2015

                                                                                    _____
                                                                                    JACQUELINE SCOTT CORLEY
                                                                                    United States Magistrate Judge